**COMMONWEALTH of Pennsylvania**

v.

**Larry MILLER, Appellant.**

Superior Court of Pennsylvania.

Submitted May 12, 2008.
Filed Aug. 14, 2008.

Douglas P. Earl, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., for Com., appellee.

BEFORE: FORD ELLIOTT, P.J., BOWES AND COLVILLE,* JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 Appellant, Larry Miller, appeals from the judgment of sentence entered on February 4, 2004 of not less than 10 nor more than 20 years' imprisonment. Following a waiver trial, appellant was found guilty of aggravated assault, aggravated assault by vehicle, causing an accident while not properly licensed, leaving the scene of an accident, driving while under the influence, simple assault, recklessly endangering another person, and criminal mischief. The sole issue presented on appeal is whether the evidence presented is sufficient to establish that appellant acted with the necessary *mens rea* to be convicted of aggravated assault.

¶ 2 On December 18, 2001 at approximately 7:45 p.m., Police Officer William Tull ("Officer Tull") and his partner were in a marked patrol car at the intersection of 52nd and Larchwood Streets in Philadelphia. (Notes of testimony, 12/18/03 at 36–37.) While at a red light, Officer Tull heard tires screeching and turned to see a large grey vehicle "fishtailing out of control." (*Id.* at 38.)

¶ 3 As the grey vehicle approached the patrol car, it was traveling at approximately 35 to 40 miles per hour in a 25–miles–per–hour zone. (*Id.* at 41–42.) When the grey vehicle came to a stop at the traffic light, Officer Tull sounded the patrol car's air horn in an attempt to get the driver's attention. (*Id.* at 43–44.) As the driver turned his head, Officer Tull could see appellant's face. (*Id.* at 43.) Using hand gestures, the officer then motioned appellant to pull over. (*Id.* at 42–43.) Instead, appellant continued to travel northbound on 52nd Street at a very slow speed, which gave the officer the impression he was going to stop the vehicle. (*Id.* at 44.) The officer testified he was driving approximately 5 miles per hour before turning on to Pine Street. (*Id.*)

¶ 4 Officer Tull sounded his air horn again and put on his overhead lights to encourage appellant to pull over. (*Id.* at 45.) When appellant finally stopped, Officer Tull pulled up beside the vehicle and was about to exit his patrol car when appellant "gunned" the engine of his vehicle and fled the scene at a high rate of speed. (*Id.* 45–46.) Appellant traveled down Pine Street at approximately 60 to 70 miles per hour "fishtailing" around the corner, without stopping at the stop sign, as he turned northbound onto 51st Street.

---

* Retired Senior Judge assigned to the Superior Court.

(*Id.* at 46–48.) Officer Tull decided to turn off his overhead lights and discontinue any pursuit of appellant because he did not want to endanger the public in a high speed chase. (*Id.* at 47–48.)

¶ 5 Officer Tull testified that he never saw appellant's brake lights come on as he observed appellant travel down 51st Street at a high rate of speed. (*Id.* at 49–50.) Appellant never slowed his vehicle despite driving through a traffic light and ignoring a stop sign at the intersection of 51st and Locust Streets. (*Id.* at 50.) Officer Tull then observed appellant drive through a red traffic light at the intersection of 51st and Walnut Streets, without attempting to stop or even put on his brakes, before colliding with two other vehicles. (*Id.* at 51.)

¶ 6 As Officer Tull and his partner approached the crash scene, appellant exited his vehicle, which had erupted into flames, and ran. (*Id.*) Officer Tull began to chase appellant on foot and eventually apprehended him from his hiding place in a stairwell behind a row of houses. (*Id.* at 51–52.) As Officer Tull had appellant in custody, he noticed that appellant had a strong smell of marijuana on his clothes and breath, bloodshot eyes, and slow slurred speech. (*Id.* at 55.) Expert testimony from forensic toxicologist, Dr. Robert Foery, revealed that appellant had recently used marijuana and was under the effects of it at the time of the accident. (*Id.* at 32–33.)

¶ 7 During appellant's trial, Police Officer Joseph Johnson ("Officer Johnson") testified as an expert from the Accident Investigation Division. (*Id.* at 63–64.) Officer Johnson determined that appellant's vehicle had accelerated through the intersection just before the crash. (*Id.* at 71–72.) Officer Johnson concluded that appellant's vehicle was traveling at a speed faster than the posted 25–miles–per–hour speed limit. (*Id.* at 72–74.)

¶ 8 Herbert Stewart was driving west on Walnut Street when his car was struck by appellant's vehicle. The impact spun Mr. Stewart's vehicle off the road with enough force to knock down a phone booth and a fence before colliding with a stopped car driven by Barbara Gunn–Lartey on 51st Street. (*Id.* at 19, 65.) Ms. Gunn–Lartey's vehicle was hit with such force that the transmission gears were knocked out. (*Id.* at 73.) Ms. Gunn–Lartey sustained injuries to her back, shoulders, and knees forcing her to endure therapy for three months. (*Id.* at 26.) Due to the serious nature of Mr. Stewart's injuries, he spent five months in hospitals and a rehabilitative center before returning home. (*Id.* at 17.) Mr. Stewart was still in day-to-day pain and in the process of relearning simple physical tasks two years after the crash. (*Id.* at 18.)

¶ 9 We begin our analysis with our standard of review:

In determining sufficiency of the evidence, the Court must review the evidence admitted at trial, along with any reasonable inferences that may be drawn from that evidence, in the light most favorable to the verdict winner. *Commonwealth v. Kimbrough*, 872 A.2d 1244, 1248 (Pa.Super.2005), *appeal denied*, 585 Pa. 687, 887 A.2d 1240 (2005). A conviction will be upheld if after review we find that the jury could have found every element of the crime beyond a reasonable doubt. *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super.2003). We may not weigh the evidence or substitute our judgment for that of the fact-finder. *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super.2001), *appeal denied*, 569 Pa. 716, 806 A.2d 858 (2002). The facts and circumstances established by the Common-

wealth need not preclude every possibility of innocence. *Commonwealth v. Reaser*, 851 A.2d 144, 147 (Pa.Super.2004). 'Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.' *Commonwealth v. Sheppard*, 837 A.2d 555, 557 (Pa.Super.2003) (citing *Commonwealth v. Cassidy*, 447 Pa.Super. 192, 668 A.2d 1143, 1144 (1995)). *Commonwealth v. Judd*, 897 A.2d 1224, 1233–1234 (Pa.Super.2006).

■ ¶ 10 Appellant timely filed a notice of appeal and presents the following issue: whether the evidence was sufficient to establish that appellant acted with the necessary *mens rea* to be convicted of aggravated assault. (Appellant's brief at 10.)

■ ¶ 11 A person is guilty of aggravated assault, graded as a felony of the first degree, "if he attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). To prevail on a theory of recklessness in a prosecution for aggravated assault, the Commonwealth must show that the assailant's recklessness rose to the level of malice, a crucial element of aggravated assault. *Commonwealth v. Bruce*, 207 Pa.Super. 4, 916 A.2d 657 (2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). The malice that is required for aggravated assault is the same as that required for third degree murder. *Commonwealth v. Kling*, 731 A.2d 145, 147 (Pa.Super.1999), citing *Commonwealth v. Fierst*, 423 Pa.Super. 232, 620 A.2d 1196, 1203 (1993). Malice consists of a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of

social duty, although a particular person may not be intended to be injured." *Commonwealth v. Pigg*, 391 Pa.Super. 418, 571 A.2d 438, 441 (1990), citing *Commonwealth v. Drum*, 58 Pa. 9, 15 (1868). Motor vehicle crashes seldom result in an aggravated assault conviction because of this heightened *mens rea*. *Kling*, *supra* at 148. However, in some circumstances the malice requirement has been met, and this court has not hesitated to uphold an aggravated assault or a third degree murder charge depending on the particular facts of a motor vehicle crash. *See, e.g.*, *Kling*, *supra*; *Commonwealth v. Scales*, 437 Pa.Super. 14, 648 A.2d 1205 (1994).

¶ 12 Appellant relies upon the case of *Commonwealth v. O'Hanlon*, 539 Pa. 478, 653 A.2d 616 (1995). O'Hanlon was driving under the influence of alcohol when he ran a red traffic light and struck another vehicle, injuring himself and the other driver. *Id.* at 480, 653 A.2d at 617. In *O'Hanlon*, our supreme court recognized the heightened standard required to meet § 2702(a)(1) and determined that the recklessness must be "such that life threatening injury is essentially certain to occur." *Id.* at 482, 653 A.2d at 618. In reversing O'Hanlon's aggravated assault conviction, the Pennsylvania Supreme Court held that driving while intoxicated was not reckless *per se*.

¶ 13 Instantly, however, the Commonwealth distinguishes *O'Hanlon* as appellant was not found reckless based solely on his marijuana intoxication, but also on the aggregate circumstances leading up to and after the crash. Our supreme court has more recently indicated that a conviction based on malice is appropriate where there is evidence of **"sustained recklessness by a driver in the face of an obvious risk of harm** to his victims." *Kling*, *supra* at 149, discussing *Commonwealth v. Comer*, 552 Pa. 527, 716 A.2d 593 (1998) (emphasis

added). In the instant case, there was a sustained pattern of reckless driving on numerous city streets for an extended period of time.

¶ 14 Malice has been found to exist where an accident caused by a reckless motorist follows pleas from others to stop. *See Pigg, supra* (intoxicated tractor-trailer driver crashed after ignoring another driver's request to stop driving); *Commonwealth v. Urbanski,* 426 Pa.Super. 505, 627 A.2d 789 (1993) (drunk driver causes collision after ignoring pleas from wife to slow down and stop driving erratically). Appellant blatantly disregarded the officer's request to pull over and stop prior to the crash. Appellant's flight from the attempted traffic stop is evidence of his intent to continue his reckless driving in the face of obvious risk, since he had ample time to calculate the risks of driving at a high rate of speed through city streets while ignoring multiple traffic signals and signs. This is unlike the situation in *O'Hanlon, supra,* where the intoxicated driver ran only one red light. Appellant should have been put on further notice of the risks after Officer Tull discontinued his pursuit.

¶ 15 Additionally, this court has concluded that a motorist's conduct is more egregious if he does not apply his brakes or attempt to slow down before a collision than if he attempts to stop. *Commonwealth v. Dellavecchia,* 725 A.2d 186, 189 (Pa.Super.1998), citing *Comer, supra.* Officer Tull testified that he never saw appellant apply his brakes. Expert testimony from Officer Johnson also indicated that appellant had accelerated just before the crash. Furthermore, the fact that appellant ran from the scene of the crash adds to the egregious nature of his conduct, which helps to further illustrate appellant's sustained recklessness. *See Common-wealth v. Thomas,* 440 Pa.Super. 564, 656 A.2d 514, 518 (1995).

¶ 16 As the Commonwealth notes, we must look at the cumulative facts of appellant's combined actions in addressing the sufficiency of evidence for an aggravated assault conviction. *Id.* at 518 n. 4. As mentioned, appellant's drug impairment is not reckless *per se*; however, it is relevant in determining whether his recklessness was malicious. *Urbanski, supra.* The fact that appellant was under the influence of marijuana while driving at a high rate of speed, ignored traffic signals, "fishtailed" around corners, disregarded the requests of a police officer to pull over, and accelerated through the intersection just before the crash all combine to prove the malicious nature of his actions. The evidence of appellant's actions leading up to and after the crash was sufficient to allow the trier-of-fact to find appellant guilty of first degree aggravated assault because of his sustained recklessness in the face of an obvious risk of harm to his victims. Appellant's actions indicate a state of mind of a person who cares not whether he maims or kills another.

¶ 17 The Commonwealth put forth sufficient evidence at the waiver trial to meet the heightened *mens rea* requirement of the recklessness element in § 2702(a)(1). Accordingly, having found no merit to appellant's issue on appeal, we affirm the judgment of sentence.

¶ 18 Judgment of sentence affirmed.