J-A26041-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CHRISTOPHER MICHAEL SLAUGHTER, | |
| Appellant | No. 432 MDA 2015 |

Appeal from the Judgment of Sentence November 4, 2014
in the Court of Common Pleas of Dauphin County
Criminal Division at No.: CP-22-CR-0002736-2013

BEFORE:  FORD ELLIOTT, P.J.E., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:              **FILED DECEMBER 14, 2015**

Appellant, Christopher Michael Slaughter, appeals from the judgment of sentence entered in the Dauphin County Court of Common Pleas following his jury conviction of aggravated assault on a police officer and related offenses.  Appellant led police on a high speed chase in a densely populated neighborhood, causing an accident which inflicted severe, continuing injuries to a police officer and an innocent bystander.  On apprehension, police found 6.2 grams of cocaine and unused baggies in the vehicle.  Appellant challenges the sufficiency of the evidence, and claims his sentence was excessive.  We affirm on the basis of the trial court opinion.

_____

[*] Retired Senior Judge assigned to the Superior Court.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them at length here.

For context and the convenience of the reader, we note briefly that Appellant fled from a traffic stop at high speed, ignoring lights and sirens, running through a number of stop signs, and narrowly avoiding other pedestrians in a heavily populated residential neighborhood. A police officer testified as an expert that in his opinion the quantity of cocaine was possessed with intention to sell or deliver to another person.

A jury convicted Appellant of aggravated assault on a police officer,[1] aggravated assault with malice,[2] fleeing or attempting to elude a police officer,[3] recklessly endangering another person,[4] and possession with intent to deliver.[5] The court, with the benefit of a Pre-Sentence Investigation Report (PSI), sentenced Appellant to a term of not less than twenty-nine and one-half to not more than fifty-nine years' incarceration. This appeal followed.

_____

[1] 18 Pa.C.S.A. § 2702(a)(2).

[2] 18 Pa.C.S.A. § 2702(a)(1).

[3] 75 Pa.C.S.A. § 3733(a).

[4] 18 Pa.C.S.A. § 2705.

[5] 35 P.S. § 780–113(a)(30).

Appellant raises the following two questions for our review:

> I. Whether the Commonwealth failed to present sufficient evidence to sustain Appellant's conviction for: aggravated assault where Appellant did not possess the requisite *mens rea* of malice; reckless endangerment where there was very little risk of injury to bystanders, and; [sic] possession of a controlled substance with intent to deliver where Appellant did not possess the controlled substance at issue?
>
> II. Whether the trial court erred in denying Appellant's Post-Sentence Motion where his sentence was excessive and unreasonable and constitutes too severe a punishment in light of the alleged gravity of the offense, Appellant's rehabilitative needs, and what is needed to protect the public?

(Appellant's Brief, at 6).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court we conclude that there is no merit to the issues Appellant has raised on appeal. The trial court opinion properly disposes of the questions presented. (**See** Trial Court Opinion, 9/17/15, at 8-16) (concluding: (1) there was ample evidence to support the verdict of guilty for each conviction; and (2) the court properly exercised its discretion in sentencing Appellant, with the benefit of a PSI, where Appellant, who was on parole at the time of the offenses, did not accept responsibility for the horrific collision, demonstrated a complete lack of remorse, and had a previous conviction for aggravated assault). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/14/2015

A26041-15

Circulated 11/17/2015 02:28 PM

ORIGINAL

COMMONWEALTH

v.

CHRISTOPHER SLAUGHTER

: IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
: NO. 2736 CR 2013
:
: CHARGE(S): AGGRAVATED ASSAULT
: (2); FLEEING OR ATTEMPTING TO
: ELUDE POLICE; RECKLESSLY
: ENDANGERING ANOTHER PERSON;
: POSSESSION WITH INTENT TO
: DELIVER A CONTROLLED SUBSTANCE

## TRIAL COURT OPINION

This appeal follows the judgment of sentence imposed on November 14, 2015. For the reasons set forth, the judgment should be affirmed.

## PROCEDURAL HISTORY

On August 13, 2014, a jury found Christopher Slaughter ("Defendant") guilty of one count of Aggravated Assault-Police Officer, one count of Aggravated Assault-Malice, one count of Fleeing or Attempt to Elude an Officer, one count of Recklessly Endangering Another Person and one count of Possession with Intent to Manufacture or Deliver a Controlled Substance. Following the verdict, the court ordered a pre-sentence Investigation.

On September 4, 2014, Defendant filed a *pro se* Motion for Post Conviction Collateral which the court denied as premature.

On November 4, 2014, the court sentenced Defendant to an aggregate sentence of 29 ½ years to 59 years of incarceration as follows:

1

Count 1- Aggravated Assault-Police Officer- Not less than ten nor more than twenty years in a state correctional institution, a fine of $100 plus the costs of prosecution.

Count 2- Aggravated Assault-Malice- Not less than 10 nor more than 20 years in a state correctional institution, a fine of $100 plus the costs of prosecution, to run consecutive to Count 1.

Count 3- Aggravated Assault by Vehicle- *nolle pros*

Count 4- Aggravated Assault by Vehicle- *nolle pros*

Count 5-Fleeing or Attempting to Elude an Officer- Not less than 31/2 nor more than 7 years in a state correctional institution, a fine of $100 plus the costs of prosecution, to run consecutive to previous sentences.

Count 6- Recklessly Endangering Another Person- Not less than 1 nor more than 2 years in a state correctional institution, a fine of $100, to run consecutive to the previous charges.

Count 7- Manufacture, Delivery, and Possession with Intent to Manufacture or Deliver a Controlled Substance (2 grams or more)- Not less than 5 nor more than 10 years in a state correctional institution, consecutive to all other charges.

The court imposed restitution in the amount of $1000 and imposed no additional sentence on summary offenses 9-13.

Count 8- Possession of Drug Paraphernalia- *nolle pros*

(Transcript of Proceedings, Sentence, November 4, 2014, pp. 17-18(Hereinafter, "N.T. Sentencing").

Defendant filed a Post-Sentence Motion on November 13, 2014, and a Brief In Support Thereof on January 4, 2015. The Commonwealth filed a Brief in Opposition on February 4, 2015. The court denied Defendant's Post-Sentence Motion by Order of February 9, 2015.

On March 5, 2015, Defendant appealed the trial court's denial of the Post-Sentence Motion. Defendant filed a timely Concise Statement of Matters Complained of on Appeal on May 7, 2015.

FACTUAL BACKGROUND

On April 20, 2013, Officer Terry Wealand, a Sergeant with the Harrisburg City Police, was on duty assigned to the Street Crimes Unit. (Transcript of Proceedings, Trial August 11, 2014, p. 111)(Hereinafter, "N.T. Trial"). In the preceding 48 hours, Officer Wealand received information regarding a Lincoln Aviator SUV (hereinafter, "Lincoln") involved in suspected criminal activity. (N.T. Trial, p. 112). Officer Wealand obtained the plate, registration and ownership information related to the vehicle. (N.T. Trial, p. 113; p.115). Officer Wealand began work that day at 4:00 pm. He was in uniform in a two-man marked police vehicle with his partner, Officer Jon Fustine. (N.T. Trial, p.114).

Sitting in the parked police vehicle at Sixth and Curtin Streets in Harrisburg, the officers saw the Lincoln drive by, park and let out a passenger. The officers confirmed the plate number as that of the Lincoln previously identified to them. (N.T. Trial, p. 116). The vehicle re-entered traffic without signaling. (N.T. Trial, p. 119). Officer Wealand radioed his intention to initiate a

traffic stop, followed the Lincoln a few blocks then engaged the red and blue lights. The Lincoln pulled over. (N.T. Trial, p.120). Officer Fustine exited the police vehicle on the passenger side and took five or six steps to toward the Lincoln. (N.T. Trial, p. 122). The Lincoln fled. (*Id.*). Officer Fustine returned to the vehicle. Officer Wealand radioed that the vehicle fled from the traffic stop. (*Id.*).

As Officer Wealand began to follow the Lincoln, it took off at a high rate of speed, running a stop sign. The Lincoln passed a playground and baseball field at a speed such that the back end of the Lincoln lifted into the air. (N.T. Trial, pp. 123-124; p. 131). Officer Wealand activated his sirens to alert traffic through an intersection. (N.T. Trial, p. 125). Because it was a warm spring evening, many people were out on the sidewalks and near their homes. (N.T. Trial, p. 125; pp. 268-269). The Lincoln continued accelerating. Officer Wealand chose to follow the vehicle with lights and sirens rather than engage in close pursuit. (*Id.*; pp. 180-181). Officer Wealand attempted to maintain sight of the Lincoln but realized he could not keep up with it. (N.T. Trial, p. 190; pp. 269-270).

The Lincoln entered a narrow one way street, Jefferson Street, on which parked cars lined both sides and where the speed limit was 25 miles per hour. The Lincoln swerved around cars, into empty parking stalls and ran stop signs. (N.T. Trial, p. 127). Officer Fustine observed the Lincoln nearly strike a woman pushing a child in a stroller. (N.T. Trial, p. 269). Officer Wealand slowed down and sped up to clear intersections and stop signs. (N.T. Trial, p. 128). The

4

Lincoln picked up speed and ran stop signs. Officer Wealand observed it turn westbound. (*Id.*) Officer Wealand received information that a collision occurred involving a police vehicle. (N.T. Trial, p. 129).

At the same time, Officer Daniel Peiper, also with the Harrisburg Police Street Crimes Unit, was on street patrol in a police Chevy Tahoe with his K-9 partner, Thor, headed southbound on Sixth Street. (N.T. Trial, pp.78-79). Officer Peiper recalled that it was a warm spring day with many people out enjoying the weather. (N.T. Trial, p. 79). At approximately 6:30 pm, Officer Peiper saw a vehicle fleeing on Jefferson Street. (*Id.*) He suspected that the driver would reach the area he was patrolling and jump out of the vehicle. (N.T. Trial, pp. 79- 80). As his vehicle coasted at a slow speed, Officer Peiper reached back to open the K-9 cage. (N.T. Trial, p. 90). He took the steering wheel and without seeing a vehicle coming, felt a large impact. (N.T. Trial pp. 79-80; pp. 90-91). Officer Peiper could not comprehend what had occurred. (*Id.*) Officer Peifer heard other officers on the radio and another K-9 officer, taking care of Thor. (N.T. Trial, p. 81).

Officer Wealand arrived at Sixth and Forrest Streets and observed what he described as resembling a bomb scene: a marked police Tahoe on its roof and another vehicle, a green Rav-4, along the sidewalk at an angle to the Tahoe. (N.T. Trial, p. 132). Officer Fustine described screaming. (N.T. Trial, p. 271). A man told Officer Wealand that his girlfriend was under the Tahoe. (N.T. Trial, p. 137). Officer Wealand looked under the Tahoe and saw a woman, Selina Martin entrapped, and the K-9 crouched on the concrete. (N.T. Trial, pp.136-137).

5

Officer Wealand then approached the Lincoln. The officer could see that the airbags had deployed and the driver, later identified as the Defendant, leaning over and rummaging in the center console. (N.T. Trial, p. 199). Officers removed Defendant through the passenger window as they could not open other windows and doors. (N.T. Trial, pp. 140-141). Officer Wealand turned over custody of Defendant to other officers at the scene. (N.T. Trial, p. 157).

Selina Martin, the woman trapped under the vehicle, had been sweeping the porch of her home on North Sixth Street that evening as part of a community cleanup. (Transcript of Proceedings, Jury Trial, p. 62). Ms. Martin recalled little about the events preceding the incident that day, only that she heard vehicles, then a bang. She recalled seeing a vehicle flying toward her, with no opportunity to flee. (*Id.*).

In order to speak with Ms. Martin, Officer Wealand lay down under the vehicle. (N.T. Trial, p. 152). Officer Wealand engaged her in conversation continuously, fearing that she was going to expire. Ms. Martin gained leverage against Officer Wealand's head to push herself out from under the vehicle. (N.T. Trial, pp. 158-161).

Officer Peiper and Ms. Martin were transported to Hershey Medical Center. Officer Peiper's K-9 partner was transported to an emergency veterinary hospital.

As a result of the impact from Defendant's vehicle with the police Tahoe, Officer Peiper suffered a severe scalp laceration which exposed his skull causing life-threatening blood loss, a lost a kidney, a broken arm requiring

6

surgical reconstruction, a fractured hip, numerous fractured ribs, pelvic fractures, a punctured lung and nerve damage resulting in permanent numbness on his right side. (N.T. Trial, pp. 82-84; pp. 105-109). He remained in a coma for 7-8 weeks and only recalls being awake sometime in June. (N.T. Trial, pp. 80-81). Officer Peiper remained hospitalized and in rehabilitation until July 2013. (N.T. p. 84).

Officer Peiper endures relentless pain of such intensity that at one point he wanted doctors to amputate his foot. (N.T. Trial, p. 86). For an extended period of time, he required a walker or cane and assistance with basic personal care. (N.T. pp. 84-85). Officer Peiper has returned to work on a reduced schedule performing sedentary duties. (N.T. Trial, p. 87).

As a result of the incident, Ms. Martin sustained two collapsed lungs, broken ribs, a broken shoulder, a fractured spleen, laceration of the liver, a crushed pelvis, legs, wrists and arms, and cardiac injury which required numerous surgeries. (N.T. Trial, p. 67; pp. 104-105). Ms. Martin remained in an induced coma for three months. (N.T. Trial, pp. 63-64). Before the accident, Ms. Martin enjoyed excellent health, walked and rode a bicycle for fitness. Since the accident, she suffers constant pain and struggles with ordinary daily activities such including walking, standing, sitting and reaching. (N.T. pp. 67-68).

Officer Travis Pidcock, assigned to the Dauphin County Accident Reconstruction Team, participated in the search of the Lincoln. Officer Pidcock collected a baggie from the second row of the Lincoln which contained crack

7

cocaine. In addition, he collected a bag which contained other baggies. (N.T. Trial, pp. 207-208.)

Dauphin County Chief Detective John Goshert provided expert testimony that the amount of cocaine, 6.3 grams, and its street value, $486,000, along with the possession of empty plastic bags, evidenced drug trafficking. (N.T. Trial, pp. 257-263.)

## DISCUSSION

### A. Sufficient evidence supports each verdict of guilty.

Applying the well-settled standard applicable to review of sufficiency of evidence claims, ample evidence supports the verdicts of guilty of 2 counts of Aggravated Assault, Reckless Endangerment and Possession of a Controlled Substance.

In reviewing a challenge to the sufficiency of evidence,

> [a]n appellate court must review the evidence presented and all reasonable inferences drawn therefrom in a light most favorable to the verdict winner and determine whether on the record there is a sufficient basis to support the challenged conviction. The proper application of the sufficiency test requires [the Appellate Court] to evaluate the entire record and all evidence received in the aggregate and not as fragments isolated from the totality of the evidence. This standard means that [the Appellate Court] must review the evidence in the light most favorable to the Commonwealth as the verdict winner, and drawing all proper inferences favorable to the Commonwealth, determine if the jury could reasonably have concluded that all of the elements of the crime were established beyond a reasonable doubt. Moreover, the jury, as the trier of fact, is free to believe all, some or none of the evidence presented.

*Commonwealth v. Feirst*, 423 Pa. Super. 232, 241, 620 A.2d 1196, 1201 (1993)(internal citations omitted).

8

Aggravated Assault

Sufficient evidence supports the verdicts of guilty of Aggravated Assault under both 18 Pa.C.S. § 2702 (a)(1), as against Ms. Martin, and 18 Pa.C.S.§ 2702 (a)(2) as against Officer Peiper.

A person is guilty of Aggravated Assault under 18 Pa.C.S. § 2702 (a)(1), if he "attempts to cause serious bodily injury to another or causes such injury intentionally, knowingly or recklessly under the circumstances manifesting extreme indifference to the value of human life." The statute does not require as Defendant suggests, that the Commonwealth prove a specific intent to cause serious bodily injury as specific intent can be inferred from the serious bodily injury. "Where the victim suffers serious bodily injury ... the Commonwealth need only prove that [the defendant] acted recklessly under the circumstances manifesting an extreme indifference to the value of human life." *Commonwealth v. Nichols*, 692 A.2d 181, 185 (1997)(Internal citations omitted).

It is beyond dispute that Defendant caused Ms. Martin serious bodily injury, defined as "injury creating a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of function of any bodily member or organ." 18 Pa.C.S. § 2301. Ms. Martin described at length the devastating injuries she sustained, the extended period she remained in a coma and the permanent impact upon her ability to walk, sit or to attend to her basic personal care. Having established serious bodily injury, the Commonwealth bore no further burden of proof of specific intent.

9

Ample evidence supported the jury's finding that Defendant acted under circumstances manifesting extreme indifference to the value of human life. "[F]or the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue." *Nichols*, at 185, citing *Commonwealth v. O'Hanlon*, 539 Pa. 478,482, 635 A.2d 616, 618 (1985); *Commonwealth v. Hickson*, 402 Pa.Super. 53, 586 A.2d 939 (1990) *alloc. denied*, 527 Pa. 663, 593 A.2d 838 (1991).

Based upon facts markedly similar to those in the instant case, the Superior Court in *Commonwealth v. Miller*, 955 A.2d 419, 422 (2008), found that sufficient evidence of *mens rea* under § 2702 (a)(1) existed where the defendant "gunned" his vehicle after a traffic stop, fled, accelerated through an intersection and ignored stop signs resulting in a crash of significant force which seriously injured drivers in two other vehicles. *Miller* at 421. The *Miller* Court also considered that "a motorist's conduct is more egregious if he does not apply his brakes in an attempt to slow down before a collision than if he attempts to stop. At 423, *citing, Commonwealth v. Dellavecchia*, 725 A.2d 186, 189 (Pa. Super. 1998).

In this case, the jury heard evidence that Defendant sped in excess of 51 miles per hour in a 25 mile per hour zone, ran all stop signs, drove through residential and playground areas, into parking spots, narrowly avoided pedestrians, hit a full size police Tahoe with such force as to flip it over and fly into Ms. Martin. Such facts support the jury's finding of recklessness.

10

Similarly, sufficient evidence supported the elements of Aggravated Assault under 18 Pa.C.S. § 2702(a)(2), as related to Officer Peiper, which provides:

(a) Offense defined.- A person is guilty of aggravated assault if he:

\*\*\*

(2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) ...

\*\*\*

(c) Officers, employees, etc., enumerated.- The officers, agents , employees and other persons referred to in subsection (a) shall be as follows:

(1) Police Officer.

\*\*\*

Contrary to Defendant's suggestion, the Commonwealth bore no burden to prove malice as to the charge of Aggravated Assault related to Officer Peiper. Section 2702(a)(2), applicable to injuries to a police officer, requires no showing of extreme indifference to the value of human life. Rather, evidence of the serious bodily injury caused to Officer Peiper, as described at length above, proved the elements of that crime.

Recklessly Endangering Another Person

The Defendant's conduct in driving through intersections, stop signs, past a playground and into parking spaces with pedestrians nearby, easily supports

11

the verdict of guilty of Recklessly Endangering Another Person under 18 Pa. C.S. §2705.

Pursuant to 18 Pa. C.S. §2705, "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person I danger of death or serious bodily injury." 18 Pa.C.S. §2705. "To sustain a conviction for recklessly endangering another person, the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so." *Commonwealth v. Hopkins*, 747 A.2d 910, 915 (Pa. Super. 2000).

The jury heard testimony which supported the elements of Recklessly Endangering Another Person, namely, Defendant's speeding through populated neighborhoods and nearly missing pedestrians, including a mother pushing a stroller.

Possession with Intent to Deliver

Ample evidence demonstrated that Defendant possessed a controlled substances with the intent to deliver.

The jury could reasonably infer from the fact that Defendant fled from police after a traffic stop that he possessed an illegal drug. Further, his position near the console of the Lincoln after the accident supports the conclusion that he attempted to hide drugs as police approached. No other person occupied the vehicle to whom Defendant could attribute possession.

12

Finally, the jury was free to accept the testimony of Detective John Goshert, the large amount of drugs, their value and Defendant's possession of baggies evidenced Defendant's possession with the intent to deliver.

Accordingly, sufficient evidence supported the verdict.

B. The Trial Court properly denied Defendant's Post-Sentence Motion where ample evidence supports the verdicts as to each charge.

For all of the reasons set forth in the discussion as to the sufficiency of evidence, the weight of the evidence supports each verdict of guilty, such that the trial court properly exercised its discretion in denial Defendant's Post-Trial Motion.

The standard of review of a claim that the verdict was against the weight of the evidence is a review of the trial court's exercise of discretion in granting or denying the motion for a new trial. *Commonwealth v. Widmer*, 744 A.2d 745, 753.(Pa. 2000). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." (*Id.*).

The trial court properly denied Defendant's Post-Sentence Motion which asserted only that "[Defendant] was never shown to have engaged in acts which constitute the crimes of which he was convicted." (Defendant's Post-Sentence Motion para. 7).

13

The facts set forth in detail, *supra,* easily support the jury's findings as to each statutory element of the crimes. As outlined, the jury properly considered Defendants speed, his gross disregard of traffic controls in highly populated areas and the serious injury to Ms. Martin to conclude that Defendant acted with malice. Contrary to Defendant's suggestion in his Brief in Support of Post-Sentence Motion, in proving malice, the Commonwealth bore no burden to prove exactly how fast Defendant sped eluding police. (*See,* Defendant's Brief in Support of Post-Sentence Motion). Further, the jury was free to reject any suggestion that police officers caused the accident.

We also reject Defendant's argument that his conduct created no risk of injury to others merely because he sped through the streets without striking anyone. Such argument suggests that a person could be guilty of reckless conduct only where unless such conduct results in actual injury.

Finally, the trial court properly denied Defendant's Post-Sentence Motion as to the conviction of Possession with Intent to Distribute a Controlled Substance. The jury was free to reject the suggestion that the co- owner of the vehicle possessed the drugs when Defendant alone occupied the vehicle and fled when stopped for a traffic violation.

C. <u>The court properly exercised its discretion in sentencing Defendant</u>.

In sentencing Defendant, the court properly considered the gravity of the offenses, Defendant's rehabilitative needs and the need for protection of the community.

Defendant fails to demonstrate that the trial court erred in its consideration of relevant factors. Our Appellate Court have reminded that ".... the sentencing judge is in the best position to measure factors such as the nature of the crime, the defendant's character and the defendant's display of remorse or indifference." *Commonwealth v. Riggs*, 63 A.3d 780 (Pa. Super. 2012) quoting *Commonwealth v. Andrews*, 720 A.2d 764, 768 (Pa. Super. 1998).

Here, the sentencing court stated its reliance upon a thorough Pre-Sentence Report. (N.T. Sentencing, p.15). The court noted in particular its view that, based upon his parole status at the time of these serious offenses, Defendant lacked a commitment to rehabilitation. Therefore, the court properly deemed the sentence necessary for the protection of the public.

Further, the court placed significant weight upon Defendant's lack of acceptance of responsibility for the horrific collision which inalterably harmed the lives of Officer Peiper, Ms. Martin and their families. The court noted the transcript of a prison phone conversation in which Defendant flippantly acknowledged that he almost struck a mother pushing a child in a stroller. (N.T. Sentencing, p. 16). The court also noted the prison telephone conversation submitted into evidence at trial in which Defendant stated that he dodged pedestrians but that it "wasn't that serious" and "almost killed a cop" but "did not regret it". (N.T. Sentencing, p.16; N.T. Trial, pp. 300-303; Commonwealth Exhibit 39). Such comments demonstrated to the court Defendant's complete lack of remorse, the only suggestion of which Defendant offered when facing sentencing.

Accordingly, the court properly relied upon such facts and gave them the weight it deemed appropriate in fashioning the sentence.

## CONCLUSION

For all of the foregoing reasons, the judgment of sentence should be affirmed.

BY THE COURT:

RICHARD A. LEWIS
PRESIDENT JUDGE

September 17, 2015

*Superior Court* ✓
*DA* ✓
*Slaughter* ✓

2015 SEP 17 AM 9: 54
DAUPHIN COUNTY
PENNA
OFFICE OF
CLERK OF COURTS

16