J-S01030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TYRONE JOHNSON | |
| Appellant | No. 2405 EDA 2014 |

Appeal from the Judgment of Sentence July 8, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006372-2012

BEFORE:  GANTMAN, P.J., MUNDY, J., and MUSMANNO, J.

MEMORANDUM BY MUNDY, J.:  **FILED JANUARY 25, 2016**

Appellant, Tyrone Johnson, appeals from the July 8, 2014 aggregate judgment of sentence of 10 to 20 years' imprisonment, imposed after a jury found him guilty of one count each of aggravated assault and possession of an instrument of crime (PIC).[1]  After careful review, we affirm.

The trial court summarized the facts of this case as follows.

> On the evening of May 4th, 2012, Robert Parks, Maurice Washington and Washington's nephew were in the apartment that they shared at 1918 North Broad Street [in Philadelphia].  They were accompanied by three friends; Parks's girlfriend, Randy Phillips, and Phillips's brother Cam.  Appellant lived in the first floor apartment in the same building.  As the six individuals were exiting the apartment building to go to a karaoke bar, Appellant came out to the porch and began yelling at the

---

[1] 18 Pa.C.S.A. §§ 2702(a) and 907(a), respectively.

group. Appellant explained he was angry with Phillips in particular because he didn't live in the building and was making noise and leaving the door unlocked. Appellant and Phillips began to argue until Washington stepped between them.

Phillips warned Washington to be careful because Appellant had a knife, but Washington continued to argue with Appellant. As the two men stood on the porch arguing, Appellant pushed Washington, who fell backwards into Cam. When Washington returned to his feet, he raised his fists into the air. At that moment, Appellant began stabbing Washington with a knife, striking him in the stomach, chest, and neck. The handle of the knife broke off from the blade, which remained inside Washington's stomach. After stabbing Washington, Appellant ran from the porch, returned to his room, and locked the door.

Parks's girlfriend called the police to tell them about the stabbing. Police officers arrived on the scene and found Washington on the ground bleeding from the neck, Park[s]'s girlfriend rendering aid, and a knife blade separated from its handle on the ground. The police officers were told that the individual responsible for the stabbing was inside the building on the first floor. They entered the building and approached the first floor apartment, hearing both a male and a female voice. One officer knocked on the door for approximately one to two minutes, announcing his presence. After four officers attempted to force Appellant's door open, the door was opened from the inside. The police entered the apartment and noticed a female in the apartment. They also noticed Appellant, who was sweating and had blood on his hands. Appellant would not comply with the officer's repeated requests to get on the ground, so they used a taser and a control hold to get Appellant onto the ground, placing him in handcuffs. Police observed the female place an item on top of the refrigerator that was later determined to be a knife handle matching the blade that was found on the porch.

Trial Court Opinion, 5/12/15, at 1-2 (citations omitted).

In the June 5, 2012 criminal information, the Commonwealth charged Appellant with the aforementioned offenses as well as one count each of criminal attempt (murder), terroristic threats, simple assault, recklessly endangering another person, resisting arrest, and possession of marijuana.[2] At an October 25, 2012 scheduling conference, the trial court scheduled Appellant's trial for September 17, 2013, based on the trial court's calendar. On May 15, 2013, Appellant filed a motion to dismiss pursuant to Pennsylvania Rule of Criminal Procedure 600(G). On August 16, 2013, the trial court held a hearing on the Rule 600(G) motion, and it denied the motion at the conclusion of the hearing. On September 18, 2013, a five-day jury trial commenced. On September 24, 2013, the jury found Appellant guilty of aggravated assault and PIC. The jury was hung on the charge of attempted murder, and that charge was *nolle prossed*. The remaining charges were dismissed before trial or *nolle prossed*. On July 8, 2014, the trial court sentenced Appellant to 10 to 20 years' imprisonment.[3] Appellant

---

[2] 18 Pa.C.S.A. §§ 901(a), 2706(a)(1), 2701(a), 2705, and 5104; 35 P.S. § 780-113(a)(31), respectively.

[3] Specifically, the trial court sentenced Appellant to 10 to 20 years' imprisonment on the aggravated assault conviction and a concurrent two to four years' on the PIC conviction.

did not file a post-sentence motion. On July 23, 2014, he filed a *pro se* notice of appeal.[4]

On appeal, Appellant presents the following issues for our review.

> I. Was the evidence [] insufficient to convict [A]ppellant of aggravated assault as a first[-]degree felony because there was no showing that [A]ppellant acted with malice?
>
> II. Did the trial court err in denying [A]ppellant's motion to dismiss the charges with prejudice

---

[4] At the time Appellant filed his *pro se* notice of appeal, trial counsel had not yet withdrawn his representation. In accordance with Pennsylvania Rule of Criminal Procedure 576(A)(4), the trial court forwarded a copy of the *pro se* notice of appeal to Appellant's counsel. On August 8, 2014, trial counsel filed an untimely notice of appeal. Thereafter, on August 12, 2014, trial counsel filed a motion to withdraw his representation, which the trial court granted. Appellate counsel entered his appearance on October 6, 2014. On November 6, 2014, the trial court ordered Appellant to file a 1925(b) concise statement, and appellate counsel complied on November 12, 2014.

Thus, at the time Appellant filed his *pro se* notice of appeal, he was represented by counsel. Generally, a criminal defendant's *pro se* actions have no legal effect while he or she remains represented by counsel. **Commonwealth v. Hall**, 476 A.2d 7, 9-10 (Pa. Super. 1984); **see also Commonwealth v. Nischan**, 928 A.2d 349, 355 (Pa. Super. 2007) (noting that a defendant's *pro se* filings while represented by counsel are legal nullities), *appeal denied*, 936 A.2d 40 (Pa. 2007). However, our Supreme Court has held that a *pro se* notice of appeal from a final judgment filed by a represented appellant is not automatically void. **Commonwealth v. Cooper**, 27 A.3d 994, 1007-1008 (Pa. 2011). Accordingly, in the interest of judicial economy, we do not quash this appeal, because the trial court and appellate counsel subsequently perfected the appeal. **See Commonwealth v. Grosella**, 902 A.2d 1290, 1293 (Pa. Super. 2006) (explaining "[i]t is well-settled that an accused who is deprived entirely of his right of direct appeal by counsel's failure to perfect an appeal is *per se* without the effective assistance of counsel, and is entitled to reinstatement of his direct appellate rights[]") (citations and internal quotation marks omitted).

> because [] [A]ppellant was denied a prompt trial
> when it took over 365 days to get [A]ppellant's case
> to trial from the date that the complaint was filed
> against him?

Appellant's Brief at 2.[5]

Our standard of review for challenges to the sufficiency of the evidence is well settled. "In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt." *Commonwealth v. Patterson*, 91 A.3d 55, 66 (Pa. 2014) (citation omitted), *cert. denied*, *Patterson v. Pennsylvania*, 135 S. Ct. 1400 (2015). "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted), *appeal denied*, 95 A.3d 277 (Pa. 2014). As an appellate court, we must review "the entire record … and all evidence actually received[.]" *Id.* (internal quotation marks and citation omitted). "[T]he trier of fact while passing upon the

---

[5] Appellant also raised the issue of whether we should quash this appeal, which we have discussed above in footnote 4.

credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." ***Commonwealth v. Orie***, 88 A.3d 983, 1014 (Pa. Super. 2014) (citation omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013) (citation omitted), *cert. denied,* ***Diamond v. Pennsylvania***, 135 S. Ct. 145 (2014).

In this case, Appellant challenges his conviction for aggravated assault. A person commits aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). To sustain a conviction for aggravated assault, the Commonwealth must prove that the defendant acted with a *mens rea* of malice. ***Commonwealth v. Miller***, 955 A.2d 419, 422 (Pa. Super. 2008). Malice is defined as a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." ***Id.*** (citation omitted). Further, "where malice is based on the recklessness of consequences, it is not sufficient to show mere recklessness … rather, it must be shown that the defendant consciously disregarded an *unjustified and extremely high risk that his actions might cause death or serious bodily harm.*"

- 6 -

***Commonwealth v. Nichols***, 692 A.2d 181, 186 (Pa. Super. 1997) (citation omitted; emphasis in original). Specifically, Appellant contends that the Commonwealth did not prove he acted with malice. Appellant's Brief at 7. Instead, he characterizes the evidence as showing only that he "was acting out of fear that he would be attacked." ***Id.*** We disagree.

The record, viewed in the light most favorable to the Commonwealth, contains sufficient evidence to enable a jury to conclude that Appellant acted with malice in stabbing Washington numerous times. The evidence demonstrated that Appellant began a verbal altercation with six people as they were exiting the apartment building. N.T., 9/19/13, at 21. Appellant first directed his hostility at Phillips because Phillips did not live in the building. ***Id.*** at 22. Washington stepped in and Appellant then began arguing with Washington. ***Id.*** at 24. When Washington backed up, Appellant initiated physical contact by pushing Washington and knocking him off balance. ***Id.*** at 27. Washington regained his balance and raised his fist, at which time Appellant responded by swinging a knife at Washington. ***Id.*** Appellant then stabbed Washington five times, twice in the neck, once in the shoulder, once in the stomach, and once in the lower leg. N.T., 9/20/13, at 15. This evidence was sufficient to prove that Appellant consciously disregarded an unjustified and extremely high risk that his actions of swinging a knife at, and stabbing Washington would cause death or serious bodily harm. ***See Nichols***, ***supra***. Therefore, the record demonstrates

Appellant acted with malice based on his recklessness of consequences. *See id.*; *Miller*, *supra*. Further, from the evidence, the jury was free to conclude that any fear Appellant had of Washington did not negate Appellant's malice. *See Commonwealth v. Cartagena*, 416 A.2d 560, 563 (Pa. Super. 1979) (holding the fact that the victim punched the defendant was insufficient to dispel the factfinder's conclusion that the defendant acted with malice). Accordingly, we conclude the evidence was sufficient to support the jury's verdict beyond a reasonable doubt. *See Hanible*, *supra*. Consequently, Appellant is not entitled to relief on his first issue. *See Diamond*, *supra*.

In his second issue, Appellant contends that the trial court erred in denying his motion to dismiss the charges pursuant to Pennsylvania Rule of Criminal Procedure 600. Appellant's Brief at 8. Appellant asserts that the Rule 600 run date was August 10, 2013, but trial did not commence until September 17, 2013. *Id.* Appellant argues that the Commonwealth did not exercise due diligence in protecting his right to a prompt trial. *Id.* at 8-9.

We review a trial court ruling pursuant to Rule 600 for an abuse of discretion, viewing the record in the light most favorable to the prevailing party. *Commonwealth v. Claffey*, 80 A.3d 780, 787 (Pa. Super. 2013) (citations omitted), *appeal denied*, 86 A.3d 231 (Pa. 2014). Further, our scope of review is the evidence of record at the time of the Rule 600 hearing and the findings of the trial court. *Commonwealth v. Rhodes*, 54 A.3d

908, 911 (Pa. Super. 2012). Rule 600 directs that a trial must commence within 365 days from the date the Commonwealth filed the criminal complaint. Pa.R.Crim.P. 600(A)(2)(a). Further, Rule 600 states that when computing the 365-day period, the only days the trial court should include are those delays caused by the Commonwealth as a result of its failure to exercise due diligence; all other time is excluded.[6] *Id.* at 600(C)(1). The remedy for a Rule 600(A) violation is dismissal of the charges with prejudice. *Id.* at 600(D)(1).

The trial court explained that Rule 600 was not violated as follows.

> The Commonwealth clearly exercised due diligence in this case. There were no Commonwealth continuance requests made prior to trial. The trial date was set based on the court calendar alone. The fact that the trial commenced five weeks after the mechanical run date could not be attributed to a lack of Commonwealth due diligence; therefore, there was no Rule 600 violation.

---

[6] The new version of Rule 600 became effective on July 1, 2013. In **Commonwealth v. Roles**, 116 A.3d 122, 125 n.4 (Pa. Super. 2015), we applied the former version of the Rule based on the date of the filing of the criminal complaint. The new version of the Rule did not alter the substance of a defendant's speedy trial rights, however, and merely "clarif[ied] the provisions of the rule in view of the long line of cases that have construed the rule." Pa.R.Crim.P. 600 cmt. The chief practical distinction between the versions of the Rule is the manner of calculation. Under the former Rule, the periods excludable or excusable were calculated to extend the adjusted run date. Under the new version of the Rule the periods of delay attributable to the Commonwealth are added to calculate whether the allowable delay period under the Rule has been exceeded. The results are the same under either method. Consequently, although the criminal complaint in this matter was filed prior to the effective date of the new Rule, we apply the new Rule.

Trial Court Opinion, 5/12/15, at 8.

Upon review of the record, we discern no abuse of discretion. The criminal complaint was filed on June 5, 2012. Appellant obtained three continuances from July 19, 2012 to October 25, 2012, resulting in a 98-day delay attributable to Appellant, and was therefore excludable. At the scheduling conference on October 25, 2012, the trial court listed the case for September 17, 2013, which was the first available trial date on the trial court's calendar. Because the Commonwealth did not cause this delay, that 327-day period is also excludable for the purpose of Rule 600. On September 17, 2013, the trial court continued the case to September 18, 2013, which is when jury selection began. Thus, from the date the complaint was filed, on June 5, 2012, until the date trial began, on September 18, 2013, only the 44 days from June 5, 2012 to July 19, 2012 are potentially includable in calculating the Rule 600 delay period. Therefore, the trial promptly commenced under Rule 600. Pa.R.Crim.P. 600(A)(2)(a), (C)(1). Accordingly, the trial court did not abuse its discretion in denying Appellant's motion to dismiss pursuant to Rule 600. **See Claffey**, **supra**.

Based on the foregoing, we conclude that both of Appellant's issues lack merit. Accordingly, we affirm the July 8, 2014 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/25/2016