620 A.2d 1196

**COMMONWEALTH of Pennsylvania**

v.

**James R. FIERST, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 2, 1992.

Filed Feb. 24, 1993.

234

■■■■■■■

Shelley Stark, Public Defender, Pittsburgh, for appellant.

Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before ROWLEY, President Judge and HUDOCK and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from the judgments of sentence entered in the Court of Common Pleas of Allegheny County, dated January 24, 1992, which imposed sentence against appellant, James Fierst, for various criminal convictions. We vacate the judgments of sentence and remand for further proceedings.

The sequence of events which serves as the basis for the criminal complaints against appellant is protracted. On December 7, 1989, appellant went to see David Perl at the residence of Mr. Perl's mother. When appellant arrived, Mr. Perl was helping his mother into the house from the driveway. Mr. Perl's fiancee, Danielle Mainolfi, who is now his wife, was walking behind. Appellant approached Perl and asked to speak with him. Perl declined and asked if he could speak with appellant the following day. Appellant then left.

Mr. Perl and Ms. Mainolfi then went to Mr. Perl's apartment in Wilkins Township. Approximately twenty minutes after leaving Perl's mother's house in Churchill, appellant went to Perl's apartment. After that, Perl's version of the events differs markedly from that advanced by appellant. Perl testified that he let appellant in the apartment with the intent of getting rid of him. He stated that appellant anxiously began following him around the apartment. When Perl entered his bedroom to fold laundry, appellant followed him in and asked Perl for his .357 magnum gun so that he could shoot himself. Perl refused. Perl testified that appellant had previ-

ously manifested certain suicidal and homicidal tendencies. Perl then stated that appellant diverted Perl's attention by pointing to something in Perl's fish tank, and attacked him. According to Perl, appellant continuously hit him on different areas of his head and torso with a heavy metal object. During this time, he testified that appellant announced, "Give me your gun or I will kill you." Perl screamed for help and Ms. Mainolfi entered and jumped on appellant who then threw her off and began to hit her. Perl was then able to obtain a knife and he lunged toward appellant with the weapon. Appellant jumped back and yelled, "Have you gone crazy?" Shortly thereafter, appellant fled. As a result of the scuffle, Mr. Perl sustained head injuries which required 51 stitches. Ms. Mainolfi sustained minor bruises.

In contradiction to Mr. Perl's averments, appellant testified in his own behalf that Perl initiated the attack. He stated that he never asked Perl for his gun and that once they entered the bedroom Perl began to strike him without provocation. Appellant asserted that Perl wanted him out of the apartment and threatened him with a knife. Appellant then testified that Ms. Mainolfi jumped onto his back and he swung around at her. All the while appellant questioned Perl why he was acting in this manner. Appellant then left the apartment.

After the incident at the Perl apartment, appellant got in his car and drove down Greensburg Pike towards Turtle Creek. From there, he drove on the Triboro Expressway which turns into Broadway in Pitcairn. Coming down a curve in the road, appellant swerved into the oncoming lane in which George Bucar was travelling in his car. Bucar swerved off the roadway to avoid being hit by appellant and slammed into the abutting hillside. Appellant returned to his proper lane but moments later swerved into the path of another oncoming car driven by Robert Baldosky. The two cars collided. As a result, passenger Marcie Brown, whose parents owned the car, was killed. After police arrived at the scene, they removed appellant from his car which was lying on its side. Police officers noticed that appellant seemed to be suffering from a seizure.

Based on the alleged reign of terror caused by appellant, the Commonwealth filed three separate informations against him. The first information (CC 9000961) charged appellant with two counts of aggravated assault[1] and two counts of reckless endangerment of another person[2] in connection with the scuffle involving David Perl and Danielle Mainolfi. The second information (CC 9005437) charged appellant with one count of criminal homicide[3] and one count of homicide by vehicle[4] in connection with the death of Marcie Brown. The last information (CC 9009127) charged appellant with one count each of aggravated assault and reckless endangerment in connection with the aforementioned automobile accident for appellant's attempt to cause bodily injury to the driver of the automobile, Robert Baldosky. The information also charged appellant with aggravated assault and reckless endangerment in connection with appellant's prior attempt to collide with the automobile driven by George Bucar. Appellant was also charged with various summary offenses in that information.[5]

A jury trial was held from July 22–25, 1991 before the Honorable George H. Ross. On the first information, the jury convicted appellant of aggravated assault and reckless endangerment as to David Perl. Appellant was convicted of aggravated assault against Danielle Mainolfi, but was acquitted of recklessly endangering her. On the second information, appellant was convicted of murder in the third degree and homicide by vehicle. Appellant was convicted of all counts in the third information.

Trial counsel for appellant filed timely post-verdict motions, which were denied. The trial court sentenced appellant to an aggregate term of incarceration of eighteen (18) to thirty-six (36) years, including a term of imprisonment of ten (10) to

1. 18 Pa.C.S.A. § 2702(a)(1).
2. *Id.* § 2705.
3. *Id.* § 2501.
4. 75 Pa.C.S.A. § 3732.
5. Appellant was charged with the summary offenses of reckless driving, 75 Pa.C.S.A. § 3714; driving on the right side of the roadway, *id.* § 3301; and, driving without a license, *id.* § 1501.

twenty (20) years on the conviction of third-degree murder. This particular sentence was the statutory maximum for third-degree murder. Appellant then filed a motion to modify sentence, which was denied. On February 14, 1992 appellant filed his timely notice of appeal and leave to file an appeal *in forma pauperis*. The trial court granted appellant's request for leave and appointed the Allegheny County Public Defender to represent him.

Appellant raises four issues for our review:

1. was [trial] counsel ineffective for failing to offer expert testimony and instructions explaining the defense position that Mr. Fierst's actions at the time of the collision were not voluntary;

2. was the evidence insufficient to support convictions for aggravated assault with respect to Danielle Mainolfi and George Bucar insofar as the Commonwealth did not prove that they suffered serious bodily injury, or that the defendant intended to inflict such injury; and was counsel ineffective for not preserving this issue in the brief in support of post trial motions;

3. did the [trial] court provide a sufficient statement of reasons for imposing sentence for third degree murder in the aggravated range of the guidelines; and was counsel ineffective for failing to preserve this issue;

4. did the [trial] court abuse its discretion in imposing the statutory maximum sentence for third degree murder by considering only the nature of the offense?

We shall first consider appellant's claims of ineffectiveness for failing to challenge the sufficiency of two of the aggravated assault convictions as the relief for those claims is an acquittal on those counts.

 Appellant maintains that the evidence was insufficient to prove the charges of aggravated assault directed against Danielle Mainolfi and George Bucar, and that trial counsel was ineffective for failing to pursue and preserve this issue in post-verdict motions. The crux of appellant's argument is that since neither Mainolfi nor Bucar sustained serious bodily injury, the Commonwealth failed to prove that he

specifically intended to cause them serious bodily injury. Our standard of review for allegations of ineffective assistance of counsel is well-established and quite narrow. Ineffectiveness claims are subject to a three-part analysis. First, it must be demonstrated that the underlying claim is of arguable merit. Next, it must be determined whether counsel's choice of action had some reasonable basis designed to effectuate his or her client's interests. Finally, a showing must be made of how counsel's choice of action prejudiced the client. *Commonwealth v. Tavares,* 382 Pa.Super. 317, 321, 555 A.2d 199, 201 (1989), *allocatur denied,* 524 Pa. 619, 571 A.2d 382 (1989). Prejudice in the context of a claim of ineffective assistance of counsel is determined by an evaluation of whether "but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different." *Commonwealth v. Petras,* 368 Pa.Super. 372, 376, 534 A.2d 483, 485 (1987). The law presumes that counsel was effective, so that the burden of establishing ineffectiveness rests squarely upon the defendant. *Commonwealth v. Smith,* 380 Pa.Super. 619, 624, 552 A.2d 1053, 1056 (1989), *allocatur denied,* 525 Pa. 581, 575 A.2d 112 (1990). Counsel will not be deemed ineffective for failing to assert a baseless claim. *Commonwealth v. Cook,* 383 Pa.Super. 615, 623, 557 A.2d 421, 425 (1989). Moreover, in making assertions of ineffectiveness, a claimant must allege sufficient facts upon which a reviewing court can conclude that trial counsel may have been ineffective since the appellate courts will not consider such claims in a vacuum. *Commonwealth v. Durst,* 522 Pa. 2, 4, 559 A.2d 504, 505 (1989).

■ In order for us to determine whether appellant's claim contains arguable merit, we must review the sufficiency of the evidence. Our standard of review for claims raising the sufficiency of the evidence is well established. "[A]n appellate court must review the evidence presented and all reasonable inferences drawn therefrom in a light most favorable to the verdict winner and determine whether on the record there is a sufficient basis to support the challenged conviction." *Commonwealth v. Madison,* 501 Pa. 485, 490, 462 A.2d 228, 231 (1983) (citations omitted). The proper application of the suffi-

ciency test requires us to evaluate the entire trial record and all evidence actually received in the aggregate and not as fragments isolated from the totality of the evidence. *Commonwealth v. Harper,* 485 Pa. 572, 576, 403 A.2d 536, 538 (1979). *See also Commonwealth v. Griscavage,* 512 Pa. 540, 517 A.2d 1256 (1986) (explicating appropriate application of standard of review set forth in *Harper, supra* ). This standard means that we must review the evidence in the light most favorable to the Commonwealth as the verdict winner, and drawing all proper inferences favorable to the Commonwealth, determine if the jury could reasonably have concluded that all of the elements of the crime were established beyond a reasonable doubt. *Commonwealth v. Edwards,* 521 Pa. 134, 143, 555 A.2d 818, 823 (1989). Moreover, the jury, as the trier of fact, is free to believe all, some or none of the evidence presented. *Griscavage,* 512 Pa. at 543, 517 A.2d at 1257.

 Our law deems a person guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; . . .

18 Pa.C.S.A. § 2702(a). Further, as both sides stipulate, without any showing of actual serious bodily injury, the Commonwealth must demonstrate that an accused attempted to inflict serious bodily injury. *Commonwealth v. Everett,* 408 Pa.Super. 166, 169, 596 A.2d 244, 245 (1991), *allocatur denied,* 530 Pa. 639, 607 A.2d 250 (1992). Attempt is proven by establishing specific intent to commit the crime charged. *Id.* Contrary to appellant's assertion, however, intent to commit serious bodily injury need not be directed at a specific person. Further, the Commonwealth may prove its case by the use of circumstantial evidence. *Commonwealth v. Hogan,* 321 Pa.Super. 309, 314, 468 A.2d 493, 496 (1983).

In the present case, neither Danielle Mainolfi nor Robert Bucar sustained serious bodily injury. Thus, in order for the evidence to be sufficient to prove aggravated assault against each of them, the Commonwealth had to prove that appellant

intended to cause serious bodily injury. *Everett, supra.* We therefore turn to the facts of this case, taken in a light most favorable to the Commonwealth as the verdict winner, to determine whether the evidence was sufficient to convict appellant of aggravated assault against Danielle Mainolfi and George Bucar.

Appellant began beating Danielle Mainolfi after she jumped on him in response to David Perl's screams. He had been severely beating Perl before that in order to obtain Perl's gun.[6] Mainolfi testified that after she jumped on appellant's back, he threw her onto the bed and started to hit her on her head and arms with a cold black instrument she thought was a police blackjack. Taken in a light most favorable to the Commonwealth as the verdict winner, the evidence demonstrates that appellant began viciously attacking David Perl to obtain his gun. He had told Perl to give him the gun or else he would kill him [Perl]. In response to Perl's screams, Mainolfi entered and tried to stop appellant from attacking Perl. At that point, he began beating Mainolfi with a hard weapon. After appellant noticed Perl escaping to find a weapon for himself, he ceased his attack on Mainolfi and redirected his attack towards Perl. The evidence demonstrates that appellant attacked whoever stood between him and Perl's gun. The evidence indicates that he threatened to kill Perl. Given the chain of events which followed, it can be inferred that he also attempted to seriously injure Ms. Mainolfi to get the gun. The fact that Perl successfully thwarted the attack by chasing appellant away does not alter appellant's intent to cause serious bodily injury. We find that under the circumstances of this incident, the evidence was sufficient to convict appellant of aggravated assault against Ms. Mainolfi.

Next, appellant contends that the evidence is insufficient to prove aggravated assault against George Bucar. Bucar's auto was the first car which appellant encountered as he came down the Triboro Expressway into Pitcairn. Appellant was already travelling in Bucar's lane of traffic when Bucar

---

6. The evidence sufficiently proves that appellant committed aggravated assault against David Perl.

had to swerve out of the way to avoid being hit by appellant. Appellant contends that since he had already turned into his lane before seeing Bucar, he could not have had a specific intent to inflict serious bodily injury upon Bucar. Appellant misinterprets the nature of aggravated assault in this instance. David Perl testified that appellant was both suicidal and homicidal. Accepting such testimony, the jury could infer that appellant was attempting to kill himself by colliding with another car. It did not matter who was behind the wheel of the other car because appellant was attempting to collide with any car by moving his own vehicle into opposing traffic. By turning into the oncoming lane before identifying a specific car, appellant may have been trying to preclude any escape by an oncoming car which could not see him. Finally, attempt to commit aggravated assault is bolstered by the fact that after unsuccessfully attempting to collide with Bucar's auto, he swerved into the path of Marcie Brown's automobile, thereby causing the fatal collision. We find this evidence sufficiently proves that appellant attempted to commit serious bodily injury against George Bucar. Thus, appellant's ineffectiveness claim has no arguable merit and must fail. *Commonwealth v. Cook, supra.*

■ Appellant also argues that trial counsel was ineffective for failing to interview or call expert witnesses to testify concerning appellant's alleged seizure which, according to his trial testimony, occurred shortly before the automobile accident in question. He contends that such evidence would have supported his defense that his act in hitting an oncoming automobile was involuntary. In order to assess whether appellant's claim has merit, however, we must first delineate the defense which he proffers and assess its applicability. Appellant relies upon the involuntariness of his act while driving his car as a defense to third-degree murder and aggravated assault against George Bucar and Robert Baldosky. Appellant testified that before the incident occurred on the roadway in Pitcairn, the stress of his prior incident with Perl and Mainolfi brought on a seizure which caused him to lose control of his automobile. Section 301 of the Pennsylva-

nia Crimes Code does not impose criminal liability on a person for an involuntary act.[7] Although this court has never addressed this argument as to third degree murder, we have previously discussed whether a person could be found guilty of homicide by vehicle when the defendant has a seizure, thereby causing him to lose control of his car. *Commonwealth v. Cheatham*, 419 Pa.Super. 603, 615 A.2d 802 (1992).

In *Cheatham*, the appellant argued that a seizure-induced blackout is an involuntary act which lacks the *mens rea* necessary to raise his conduct from negligent to grossly negligent as required to convict for homicide by vehicle. *Id.* at 605–07, 615 A.2d at 804. Without applying section 301 of the Crimes Code, the panel in *Cheatham* held that where the appellant knew the frequency of his seizures and that the seizures came on without warning, and chose to drive despite such knowledge, the appellant's conduct rose to a level of gross negligence sufficient to impose liability for homicide by vehicle. *Id.* at 611–13, 615 A.2d at 807. The panel reasoned that liability attaches to those who know or should know that death is a probable consequence of their actions. *Id.* Thus, the judgment of sentence was affirmed because the appellant knew that his seizures could cause the death of another, despite the fact that, at the critical moment, his actions were involuntary.

In the present matter, appellant testified that he had experienced seizures very few times in the past and they were brought on by distress. He also commented that he never considered the seizure disorder very serious. N.T. 7/24/91 at 27. Such evidence is not so strong compared with that which the Court in *Cheatham* faced with regard to the seizure disorder. However, it is clear that appellant, in his own mind, knew that stressful situations could cause him to have seizures. Therefore, appellant's alleged seizure disorder would provide no defense to the charge of homicide by vehicle if he

---

7. Section 301 provides the following rule of law:
 **(a) General rule.**—A person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act of which he is physically capable.
 18 Pa.C.S.A. § 301(a).

chose to drive in such situations. In light of this fact, counsel cannot be deemed ineffective for failing to mount a defense to the charge of homicide by vehicle based on this theory.

However, the *mens rea* requirement applicable to both third degree murder and aggravated assault is different from that which pertains to homicide by vehicle. As stated previously, a conviction for homicide by vehicle can be sustained merely upon evidence that a defendant was grossly negligent. However, in order to sustain a conviction for third-degree murder, codified at 18 Pa.C.S.A. § 2502(c), the Commonwealth must establish that the killing was committed with malice aforethought. *Commonwealth v. Reilly,* 519 Pa. 550, 564, 549 A.2d 503, 510 (1988). Malice must also be present to sustain a conviction for aggravated assault. *Commonwealth v. Hickson,* 402 Pa.Super. 53, 60, 586 A.2d 393, 396 (1990), *allocatur denied,* 527 Pa. 630, 592 A.2d 1297 (1991). Malice exists "where there is a wickedness of disposition, hardness of the heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Reilly,* 519 Pa. at 564, 549 A.2d at 510. Where malice is based on the recklessness of consequences, it is not sufficient to show mere recklessness as codified at 18 Pa.C.S.A. § 302(b)(3);[8] but rather, it must be shown that the defendant consciously disregarded an *unjustified and extremely high risk* that his actions might cause death or serious bodily harm. *In the Interest of Smith,* 396 Pa.Super. 624, 637, 579 A.2d 889, 895 (1990), *allocatur denied,* 527 Pa. 610, 590 A.2d 296 (1991) (emphasis added).

Although the evidence presented by the Commonwealth may be sufficient to convict appellant of third degree murder

**8.** Section 302(b)(3) provides:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).

and the related charges of aggravated assault, we find that appellant's proposed defense to those charges was a matter for the jury's consideration due to the alleged involuntariness of his actions and lack of malice due to seizure. As such, appellant was entitled to an adequate presentation of the defense. Appellant testified that although he had experienced seizures in the past, they occurred relatively infrequently and never while driving. Although appellant disregarded the risk of seizure while driving, we cannot say with any certainty that his actions in disregarding this risk rose to the level necessary to prove the malice requisite for aggravated assault and third degree murder. The claimed involuntariness of appellant's actions could arguably serve as a valid defense for the jury's consideration, along with the Commonwealth's evidence, to both of these charges under section 301 of the Crimes Code. Thus, it is possible that appellant possessed an adequate defense to the Commonwealth's evidence relating to malice. Having ascertained that appellant could at least argue that the involuntariness of his actions negated the necessary degree of malice to sustain the third degree murder count and the related aggravated assault charges, we must now decide whether his claim has "arguable merit" within the meaning of an ineffectiveness claim.

■ Appellant argues that prior counsel failed to interview pertinent witnesses. On that subject, we have held:

It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. Although counsel's failure to interview witnesses about whom he neither knew nor should have known does not constitute ineffectiveness, he must investigate those he knows or has reason to know would be helpful to the defense.

*Commonwealth v. White,* 303 Pa.Super. 550, 553, 450 A.2d 63, 64–65 (1982). *See also Commonwealth v. Anderson,* 410 Pa.Super. 524, 600 A.2d 577 (1991), *allocatur denied,* 531 Pa. 644, 612 A.2d 983 (1992) (counsel's failure to interview witnesses whose testimony is beneficial and exculpatory can consti-

tute ineffectiveness if no reasonable basis otherwise exists for counsel's failure). No case of this Commonwealth has discussed the need for expert medical testimony to support a defense theory that certain acts were involuntarily committed. We find guidance, however, in those cases which have discussed the need for expert psychiatric testimony in cases where a defense of diminished capacity is proffered.

In *Commonwealth v. Potts*, 486 Pa. 509, 406 A.2d 1007 (1979) (plurality), our Supreme Court addressed the ineffectiveness of trial counsel in a murder case where counsel failed to present psychiatric witnesses to testify to the defendant's emotionally disturbed state of mind. The only defense offered in *Potts* was that the defendant was psychotic and therefore incapable of acting with malice. The Supreme Court agreed with appellant and awarded a new trial. The plurality held:

> When the only issue is appellant's state of mind, trial counsel's decision not to present relevant psychiatric and psychological testimony which may be determinative of the issue can be as damaging to the truthfinding process as the failure in other contexts to present the testimony of an available eyewitness, or other key witness.

*Id.* at 513, 406 A.2d at 1009 (citations omitted). Similarly, the Supreme Court has held:

> In a case where virtually the only issue is the credibility of the Commonwealth's witness versus that of the defendant, failure to explore all alternatives available to assure that the jury heard the testimony of a known witness who might be capable of casting a shadow upon the Commonwealth's witness's truthfulness is ineffective assistance of counsel.

*Commonwealth v. Twiggs*, 460 Pa. 105, 111, 331 A.2d 440, 443 (1975). This principle applies with equal weight to favorable expert testimony. *Commonwealth v. Guerrisi*, 297 Pa.Super. 245, 250, 443 A.2d 818, 821 (1982).

In the case *sub judice*, the lack of malice involved in the claimed involuntariness of appellant's actions based on seizure was his only defense to third degree murder and aggravated assault arising from the automobile collision. Appellant main-

tains that counsel was ineffective for failing to interview or otherwise offer expert testimony to explain how the seizure affected his control of the automobile. Such evidence, coming from an expert, would have been probative of appellant's state of mind at the time of the automobile incidents. The evidence would also have aided the jury in resolving the conflicts between the Commonwealth's theory of liability—that appellant intended to commit suicide—and that of appellant—that appellant was subject to seizure while driving the automobile. *Commonwealth v. Potts, supra.* Moreover, appellant avers that trial counsel had knowledge of his seizure disorder at least one year before trial.

The Commonwealth responds that appellant has not met his threshold burden for establishing an ineffectiveness claim—namely, that he has not explained what exculpatory evidence would have been presented had counsel investigated this avenue. In support, the Commonwealth cites to our Supreme Court's decision in *Commonwealth v. Wallace,* 495 Pa. 295, 433 A.2d 856 (1981). We find that the Commonwealth's reliance on this decision is misplaced. The Court in *Wallace* held that in order for counsel to be deemed ineffective for failing to pursue an investigation, the defendant must allege a benefit that could have resulted from the investigation. *Id.* at 298, 433 A.2d at 858. Here, appellant has averred that investigation of medical experts as to his seizure disorder could bolster his lack of malice defense to third degree murder and aggravated assault by showing how the disorder affected his motor control. We therefore find that appellant's claim of ineffectiveness has arguable merit.

From the record we cannot ascertain whether counsel had a reasonable basis for failing to interview or call expert witnesses. Under these circumstances, we would normally remand for an evidentiary hearing on counsel's ineffectiveness. However, we will not do so in this case because our resolution of appellant's ineffectiveness claim on the underlying issue involving the jury instruction mandates the grant of a new trial.

■ Appellant argues that trial counsel was ineffective for failing to request a jury charge that appellant could not be

liable for third degree murder and aggravated assault because his involuntary actions would not suffice to prove malice. We agree and find that this case must be remanded for a new trial on third degree murder and aggravated assault charges emanating from the automobile incident.

 Jury instructions must be viewed in their totality to assess whether the charge accurately and adequately explains the relevant law to the jury and guides the jury in its deliberations. *Commonwealth v. Ort,* 398 Pa.Super. 475, 482, 581 A.2d 230, 234 (1990), *allocatur denied,* 527 Pa. 623, 592 A.2d 44 (1991). The trial judge is not required to grant a requested point for charge, so long · as the charge given sufficiently states the pertinent law. *Commonwealth v. Sanders,* 380 Pa.Super. 78, 95, 551 A.2d 239, 248 (1988), *allocatur denied,* 522 Pa. 575, 559 A.2d 36 (1989).

Appellant suggests that trial counsel was ineffective for failing to request a charge regarding the involuntariness of his actions as they related to malice, a necessary element in proving third degree murder and aggravated assault. The Commonwealth attempts to refute this argument by maintaining that the charge to the jury adequately covered the involuntariness of appellant's actions. The trial judge charged the jury with the various categories of culpability, as defined in section 302 of the Crimes Code, which were necessary to prove the plethora of crimes with which appellant was charged. However, the trial judge failed to instruct the jury that appellant could be exonerated of the charges of third degree murder and aggravated assault relating to the automobile collision if it found that appellant's actions were involuntary, in accordance with 18 Pa.C.S.A. § 301. Since we have determined that appellant had a valid defense on the basis of the involuntariness of his actions, the trial judge would have been required to instruct the jury of his defense had trial counsel requested such a charge. Since the jury was not instructed as to the involuntariness of appellant's actions pursuant to section 301, it had no guidance on how to apply the defense to the circumstances of the case. Thus, the charge to the jury did not adequately explain the pertinent

points of law. Furthermore, this was appellant's sole defense to the collision related charges. As such, counsel could have had no reasonable basis for their failure to request such a charge. We also find that appellant was prejudiced by counsel's ineffectiveness. Had the jury been aware of its ability to exonerate appellant on the basis of his seizure disorder, it is entirely possible they would have acquitted appellant on the related charges.[9] Thus, we find that appellant has averred a claim of ineffectiveness of trial counsel which warrants the granting of a new trial on the particular claims which counsel's ineffectiveness tainted.

Appellant's next two issues concern the discretionary aspects of sentencing for appellant's ten (10) to twenty (20) year conviction for third-degree murder. Because we vacate the conviction as to third-degree murder, however, we need not consider the sentencing issues. Although we affirm all of appellant's convictions except for third-degree murder and the two counts of aggravated assault related to the automobile incident, the trial court's sentencing scheme has been unavoidably disturbed by our disposition. Accordingly, we must vacate all judgments of sentence entered in this case.

Judgments of sentence are vacated; new trial is awarded on the count of third-degree murder contained in information number CC 9005437; new trial is awarded on the counts of aggravated assault contained in information number CC 9009127; case remanded for resentencing on all other counts. Jurisdiction is relinquished.

9. The Commonwealth refers us to the decision in *Commonwealth v. Crosby*, 444 Pa. 17, 279 A.2d 73 (1971) which held that "unconsciousness as a defense has been permitted only where the defendant's state of unconsciousness resulted from a physical ailment such as epilepsy, or a physical disability such as that resulting from a blow on the head." *Id.* at 22, 279 A.2d at 76 (citations omitted). The Court further stated, "the defense of unconsciousness resulting from a blackout—a complete defense—has never been recognized in Pennsylvania where, as here, the defendant's state of unconsciousness is the result of excitement or emotion naturally engendered by the commission of an unlawful, cold-blooded killing." *Id.* at 22–23, 279 A.2d at 76. In the present case, however, appellant contends that he suffers from a seizure disorder.