J-S02036-18

2018 PA Super 185

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT PALMER | : | |
| | : | |
| Appellant | : | No. 3618 EDA 2016 |

Appeal from the Judgment of Sentence October 28, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010047-2015

BEFORE: BOWES, J., NICHOLS, J., and RANSOM*, J.

CONCURRING AND DISSENTING OPINION BY RANSOM, J.:**FILED JUNE 26, 2018**

I concur as to the challenge to the admission of evidence. However, I dissent from the decision to affirm Appellant's conviction for aggravated assault attempting to cause serious bodily injury to a "John Doe" victim.

The majority's decision accepts the Commonwealth's representation that Appellant fired into a crowd of people. **See also** Commonwealth's Brief at 11-13. However, I believe that the evidence presented at trial fails to establish the "presence of a crowd." **Id.** at 13.

First, the shooting occurred around 11:00 p.m. on a weekday (Thursday), not during daylight or a weekend night, when it may be inferred that the street was busy. Notes of Testimony (N. T.), 8/16/16, at 41; N. T., 8/17/16, at 58, 75, 78, 83-84.

_____
* Retired Senior Judge assigned to the Superior Court.

Ms. Kelsey testified that there were not "a lot of people" in Yolo's – maybe "like ten of [them]," and she knew "[j]ust about everybody in there." N. T., 8/16/16, at 47. Ten people inside a building does not support the Commonwealth's contention that it was a "busy" street outside.

After leaving Yolo's, which is located at the corner of Chadwick Street and Susquehanna Avenue, Ms. Kelsey saw "another friend" before entering her automobile on Chadwick Street. *Id.* at 43, 47.[1] Only one person on Chadwick Street also fails to support the Commonwealth's contention that it was "busy" outside at 2204 North 17th Street, where the ten cartridge casings were recovered and, thus, where the shooter was standing. *Compare* Commonwealth's Brief at 11-12, *and* TCO at 10-11, *with* N. T., 8/17/16, at 43-44, 48-51, 113, 117, 120.

Ms. Kelsey drove west on Susquehanna Avenue, a one-way street, then turned left on to North 17th Street, also a one-way street. N. T., 8/16/16, at 45, 48-49; N. T., 8/17/16, at 36. Ms. Kelsey testified that "everybody was following me to our next location." N. T., 8/16/16, at 48. In other words, any other automobiles from her party were **behind** hers. She was the first one to turn on to North 17th Street. She was only on North 17th Street for "like five seconds" when she was shot. *Id.* at 49. None of the other cars had turned

_____

[1] A map was admitted as Exhibit C-30 and shown during witnesses' testimony in order to aid the jury with their perception of the area and the physical relationships amongst the recovered cartridges, the deli from which the surveillance footage was taken, Yolo's, the path Ms. Kelsey travelled, and the location of her car when she was shot.

yet, because her vehicle was in front. So, none of the people in those vehicles could be considered "John Doe" or part of a "crowd" on North 17th Street, as they were not even in the shooter's line of vision. They had not yet turned on to North 17th Street, so there is no reason for the shooter to know they were coming. Also, Ms. Kelsey had waited for everybody else to enter their vehicles before she began to move, meaning that there was not anyone from her party still walking around outside on any of the aforementioned streets. *Id.* at 42.

Furthermore, the cartridge casings were discovered north of Susquehanna Avenue; the shooter would have to have been firing south, the same direction as the traffic flow on 17th Street – *i.e.*, vehicles would not have been approaching him if they turned off Susquehanna Avenue and on to 17th Street. N. T., 8/17/16, at 43-44, 48-51, 113, 117, 120. If Appellant's intent was to shoot someone in Ms. Kelsey's party, it is inexplicable that he was waiting north of Susquehanna Avenue when the party could only turn south on to 17th Street. Additionally, it is incomprehensible why Appellant would have been walking back and forth on the 2200 block of North 17th Street for almost three hours if his intent was to shoot into a crowd turning in a different direction. Ex. C-37; N. T., 8/17/16, at 56, 58, 63-65, 68, 75, 78, 83.

In addition, both Officer Katie Lankford and Detective Michael Rocks testified that police knocked on about thirty doors on both sides of 17th Street between Susquehanna Avenue and Dauphin Street, the parallel street immediately north of Susquehanna Avenue, and found no one who was present or saw anything during the shooting. *Id.* at 43-44, 121, 173-74.

During his testimony, Detective Rocks made a passing reference to a man named Faheem Williams being "at the scene at the time of the shooting," but no testimony was provided as to Mr. Williams's exact location, including whether the shooter could have been aware of his presence. *Id.* at 122.

The only arguable evidence of a "crowd" is when, asked if this is a "busy intersection" with "[a] lot of people walking around out there," Detective James Wearing answered affirmatively. *Id.* at 94. However, there is no other context, including whether the streets were busy at that particular time or day when the shooting occurred – *e.g.*, an intersection could be busy at 9:00 a.m. on Mondays but not at 11:00 p.m. on Thursdays.

Based upon my review of the record, I find insufficient evidence to support the majority's assertion that a crowd was present when Appellant fired his weapon so that the jury could infer that Appellant hoped or believed to hit someone in that crowd with one or more bullets. Without the presence of a crowd, the majority's entire analysis crumbles.

Instead, for the reasons that follow, I would reverse Appellant's conviction for aggravated assault attempting to cause serious bodily injury to a "John Doe" victim. Also, to the extent that this decision would disrupt the trial court's sentencing scheme, I would vacate the judgment of sentence and remand to the trial court for re-sentencing.

"Where the victim suffers serious bodily injury, the Commonwealth is not required to prove specific intent. The Commonwealth need only prove the defendant acted recklessly under circumstances manifesting an extreme

indifference to the value of human life." ***Commonwealth v. Patrick***, 933 A.2d 1043, 1046 (Pa. Super. 2007) (*en banc*) (internal brackets and citations omitted).[2]  However, "where the victim does not sustain serious bodily injury, the Commonwealth must prove that the appellant acted with specific intent to cause serious bodily injury." ***Commonwealth v. Holley***, 945 A.2d 241, 247 (Pa. Super. 2008) (citation and internal brackets omitted).

Here, for the count of aggravated assault against the "John Doe" victim, the Commonwealth only alleged and the trial court only instructed the jury on the charge that Appellant **attempted** to cause serious bodily injury, **not** that Appellant **caused** the John Doe serious bodily injury.  N. T., 8/18/16, at 69-70, 84-85, 87-88, 105-07.  Thus, the Commonwealth had to prove that Appellant acted with the specific intent to cause serious bodily injury; evidence that Appellant acted recklessly is insufficient. ***Patrick***, 933 A.2d at 1046; ***Holley***, 945 A.2d at 247.

Appellant was convicted of aggravated assault against a "John Doe" pursuant to 18 Pa.C.S. § 2702(a).  Section 2702(a) lists nine definitions for aggravated assault, but only two are applicable.  Section 2702(a)(1) states that a defendant is guilty of aggravated assault if he or she "attempts to cause serious **bodily** injury **to another**, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference

---

[2] Thus, for the aggravated assault against Ms. Kelsey, since Ms. Kelsey sustained serious bodily injury, the Commonwealth only needed to establish that Appellant acted recklessly.

to the value of human life" (emphasis added).  Similarly, Section 2702(a)(4) states that a defendant is guilty of aggravated assault if he or she "attempts to cause or intentionally or knowingly causes **bodily** injury **to another** with a deadly weapon" (emphasis added).  Both definitions require that the defendant intended to cause some degree of **bodily** injury **to another person**.

The trial court primarily relies upon **Commonwealth v. Lopez**, 654 A.2d 1150 (Pa. Super. 1995), quoting that case for the legal principles:  "When no serious bodily injury results from the accused's actions, the Commonwealth must prove that he attempted to cause another to suffer such injuries. . . . This intent need not be directed at a specific person."  Trial Court Opinion (TCO), 4/10/17, at 10 (quoting **Lopez**, 654 A.2d at 1154 (citations omitted)). In **Lopez**, the defendant fired shots into the residence of his ex-girlfriend, which, unknown to him, was vacant at the time.  654 A.2d at 1152.  This Court held that the defendant's state of mind, not the former girlfriend's location, was the determining factor when deciding whether he committed aggravated assault upon another.  **Id.** at 1155.  In that case, there was evidence to demonstrate the defendant's intent to harm his former paramour – he had previously threatened to kill her and "considered himself to be at 'war' with her." **Id.**  Ergo, in **Lopez**, unlike in the current matter, a specific person could be named as the person to whom the defendant intended to cause serious bodily injury.  Even if the defendant in **Lopez** was mistaken as to his ex-

girlfriend's whereabouts, he still **believed** that another person was the target of his assault, and the Commonwealth thereby established intent.

The trial court also attempts to rely, in part, upon **Commonwealth v. Fierst**, 620 A.2d 1196 (Pa. Super. 1993), for the concept that "intent to commit serious bodily injury need not be directed at a specific person." TCO at 10 (quoting **Fierst**, 620 A.2d at 1201). Nevertheless, the trial court's reliance is again misplaced. In **Fierst**, this Court held that "the evidence was sufficient to convict appellant of aggravated assault" after the appellant, who "had previously manifested certain suicidal and homicidal tendencies," was found to have intentionally driven into an oncoming automobile. 620 A.2d at 1199, 1201-02. Although that appellant did not know who the specific person driving the oncoming car was, he still knew that there was a person driving that other moving vehicle. **Id.** at 1199, 1201. The appellant did not drive into a parked automobile or another stationary object. Consequently, the reasonable inference was that the appellant intended to drive into both the oncoming car and its driver. **Id.** at 1201. Combined with the appellant's known mental state, driving directly into an oncoming vehicle was sufficient to find that a person intended to cause the result of serious bodily injury to another. **Id.** at 1202. Accordingly, albeit that "intent to commit serious bodily injury need not be directed at a **specific** person," **id.** at 1201 (emphasis added), it still needs to be directed at a **person** whom the appellant **knew or believed** was present. Here, the Commonwealth did not establish the

presence of a person nor that Appellant knew or incorrectly believed that someone was the target of his assault.

I also look to the more recent case of **Commonwealth v. Jackson**, 955 A.2d 441 (Pa. Super. 2008). In **Jackson**, three police officers were investigating a shooting incident that had occurred earlier in the day, targeting but missing the intended victim, who was with his girlfriend and her children. **Id.** at 442. While the officers were interviewing a third-party witness at the scene, the appellant approached the intended victim and starting shooting. **Id.** No one was injured, and the appellant was apprehended and charged with aggravated assault and other crimes. **Id.** The evidence showed that the three police officers, the girlfriend, her children, and the witness were "near [the a]ppellant's intended victim" and that the appellant "fired a deadly weapon toward them." **Id.** at 448. The appellant challenged the sufficiency of the evidence to sustain his conviction for the aggravated assaults of the three police officers, the girlfriend, her children, and the witness, who were all unharmed. **Id.** at 445. Specifically, the appellant "argue[d] that the Commonwealth failed to establish that he had the specific intent to cause serious bodily injury to any of these persons, and thus, the requisite intent for his aggravated assault convictions is lacking." **Id.** at 445-56. In considering this issue, this Court stated:

> There is . . . no other evidence, in the form of circumstances, actions or words, occurring before, during, or after the shooting, that tends to demonstrate that [the a]ppellant specifically intended to inflict injury upon these particular persons. Therefore, the only circumstance in the record from which it may be inferred

that [the a]ppellant had the intent to cause these persons serious bodily injury was his firing a deadly weapon in their direction. Based on the totality of the circumstances, we conclude that the evidence was insufficient to establish beyond a reasonable doubt that [the a]ppellant harbored the specific intent to cause serious bodily injury with a deadly weapon to any of these persons.

*Id.* at 448.

In the instant case, there is no evidence, in the form of circumstances, actions, or words, occurring before, during, or after the shooting, demonstrating that Appellant specifically intended to inflict injury upon anybody. Hence, the only circumstance in the record from which it may be inferred that Appellant had the intent to cause anyone serious bodily injury was his firing a deadly weapon -- but not at any particular person or thing. Therefore, based upon the analysis in **Jackson** and considering the totality of the circumstances, I conclude that the evidence was insufficient to establish beyond a reasonable doubt that Appellant harbored the specific intent to cause serious bodily injury to any person.[3]

_____

[3] In **Jackson**, this Court ultimately affirmed the appellant's convictions for aggravated assault, based upon the doctrine of transferred intent – *i.e.*, "the person who ultimately is the victim not be the original intended victim," because it was "an established fact that [the a]ppellant intended to cause serious bodily injury to [the intended victim] with a deadly weapon." 955 A.2d at 450. However, unlike in the current action, the evidence in **Jackson** established who the intended victim was and that there even was an intended victim, in order for intent to be transferred. **Id.** at 442, 450.

In the present case, the Commonwealth never argued and the trial court opinion does not suggest that transfer of intent was applicable to the aggravated assault attempting to cause serious bodily injury against the John Doe victim. **See generally** Commonwealth's Brief; TCO. The concept of

_____

transferred intent was only presented to the jury as transferring from "John Doe" to Ms. Kelsey.

During its opening statement, the Commonwealth contended that "a concept called transferred intent" applied to the aggravated assault against Ms. Kelsey only, explaining:

> [T]ransferred intent means that the law recognizes that if somebody intends to commit a crime against one person, but they actually commit a crime against another person, they are responsible for both. . . . That's the idea of transferred intent.
>
> Make no mistake, Danielle Kelsey was not the target on July 16th, 2016, but she's the one whose life was turned upside down because of his actions.

N. T., 8/16/16, at 31-32.

In its closing argument, the Commonwealth stated to the jury:

> [Appellant is] charged with aggravated assault and I want to spend a little bit of time talking about transferred intent. . . . Everyone agrees it is the fundamental principle of this case that Danielle Kelsey was a completely innocent victim, that she had nothing to do with it, that [Appellant] was not trying to shoot her. . . .
>
> The reason he's responsible for Danielle Kelsey, even though he wasn't shooting at her it's transferred intent.

N. T., 8/18/16, at 62.

Similarly, the trial court instructed the jury on the doctrine of transferred intent as to shooting of Ms. Kelsey only:

> There is a concept called transferred intent under the law. . . .
>
> If you find beyond a reasonable doubt that the defendant intended to kill or cause serious bodily injury to an unknown person or persons and was acting with that intent at the time that he, in fact, caused serious bodily injury to Danielle Kelsey, you may find that the defendant acted with the specific intent to kill or cause

In conclusion, I would agree with Appellant that the Commonwealth failed to establish that another person was ever the intended victim of his shootings, such that a body even existed for bodily injury to occur. Accordingly, I would find the evidence to be insufficient to establish aggravated assault and would reverse Appellant's conviction for one count of aggravated assault attempting to cause serious bodily injury to a "John Doe" victim; I would affirm Appellant's convictions on all remaining counts. As this decision would disrupt the trial court's sentencing scheme, *see* TCO at 1, I would also vacate the judgment of sentence and remand to the trial court for re-sentencing.

---

serious bodily injury under what the law calls the doctrine of transferred intent.

*Id.* at 88-89.

I mention that the Commonwealth argued and the trial court instructed that transferred intent only applied from "John Doe" to Ms. Kelsey in order to show that the jury were never presented with the option that intent transferred to "John Doe." I am not contending that the jury, in fact, found Appellant guilty of aggravated assault causing serious bodily injury to Ms. Kelsey based on the theory of transferred intent, because the evidence is sufficient to support this conviction based on a *mens rea* of recklessness. Moreover, Appellant did not contest the sufficiency of the evidence to establish his conviction for aggravated assault causing serious bodily injury to Ms. Kelsey.