J-S55022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
:  PENNSYLVANIA
:
v.  :
:
:
:
MATTHEW MARSHALL MURPHY  :
:
Appellant  :  No. 641 WDA 2020

Appeal from the Judgment of Sentence Entered October 17, 2019
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0000885-2017

BEFORE:  BOWES, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:  **FILED: MARCH 26, 2021**

Matthew Marshall Murphy (Appellant) appeals from the judgment of sentence entered in the Westmoreland County Court of Common Pleas, following his jury convictions of three counts of aggravated assault by motor vehicle[1] and related offenses.  Appellant avers:  (1) the trial court erred in denying his request for a jury instruction that the Commonwealth bore the burden to show his actions were not caused by a seizure; and (2) the sufficiency and weight of the evidence did not establish his actions were voluntary.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3732.1(a).  The trial court also found Appellant guilty of summary traffic violations, discussed ***infra***.

This matter arose from a vehicle accident on May 8, 2016, at approximately 10:30 a.m., at an intersection on state route 119 in Youngwood Borough, Westmoreland County. It was not disputed that Appellant "was driving his Dodge Ram 2500 pickup truck in excess of 70 miles per hour in a 35-mile-per hour zone, [and] he collided with a Hyundai Elantra, injuring all its occupants:" W.S., V.S., and their two children, one-year old A.S. and two-year old. G.S (collectively, the victims). *See* Trial Ct. Op., 5/26/20, at 1; N.T. Jury Trial at 91. The Elantra "flipped over." N.T. Jury Trial at 77. After impact, Appellant's truck "proceeded to jump over the curb and [proceed] through the parking lot of the shopping plaza," hitting a parked car. *Id.*at 149, 150, 209. As we discuss *infra*, eyewitnesses who approached Appellant immediately after the accident observed he appeared to be having a seizure. *See id.* at 151, 162.

Appellant was charged with three counts of aggravated assault by motor vehicle, one count each of simple assault and recklessly endangering another person[2] (REAP), and multiple Vehicle Code violations. The matter proceeded to a four-day jury trial on July 15, 2019. V.S. and W.S. testified.[3]

---

[2] 18 Pa.C.S. §§ 2701(a)(1), 2705.

[3] V.S. described her injuries: she broke "almost [her] entire back[,] had brain bleeds[,] dislocated [her] shoulder, tore [her] labrum[, and] had a collapsed lung[.]" N.T. Jury Trial, 7/15-18/19, at 92-93. At the time of trial, she was no longer working and had a permanent disability. *Id.*at 94-95. W.S. suffered "a broken clavicle and collar bone, tor[n] shoulder blade, a brain injury and . . . nerve damage in [his] arm." *Id.* at 104. Two year-old G.S. "broke

The Commonwealth also called eyewitness[4] Joni Allison, who testified to the following. She was driving in the right lane and "coming to a stop." N.T. Jury Trial at 132, 134. The victims' car was in front of her. *See id.* In her rearview mirror, Allison observed Appellant's truck "coming up behind [her] at a very fast rate of speed." *Id.* at 132-33. Allison explained: "The truck moved from directly behind me, swerved into the left-hand lane," "immediately cutback in front of [me]," and hit the victims' car. *Id.* at 133, 135. Allison did not see Appellant's brake lights illuminated. *Id.* at 135.

The Commonwealth presented the following testimony of additional eyewitnesses, Brandon and Tyler Wainwright, brothers. They were each driving a vehicle, and Brandon was behind Tyler. *Id.* at 147, 159. Brandon testified Tyler was next to the victims' car.[5] *Id.* at 148. Brandon heard "a vehicle approaching that [was] bouncing off rev limiter [sic,]" or, as he explained, he heard "the high RPMs of the vehicle just behind [him], audibly approaching." *Id.* After the crash, Brandon observed Appellant's truck go into the parking lot. *Id.* at 149. Brandon went to Appellant's truck in order

_____

his femurs[,] had a punctured lung[,] broke his jaw," and suffered a traumatic brain injury that "requires shots for the rest of his life." *Id.* at 95. One year-old A.S. "had some contusions on the side of his head," and was "fine" by the time of trial. *Id.*

[4] The Commonwealth called a total of seven eyewitnesses to testify at trial.

[5] Tyler, however, denied any car was next to him, and instead, when he heard a crash, looked in his rearview mirror, and saw debris behind him. N.T. Jury Trial at 161.

to "check on" him, and Tyler followed Brandon. *Id.* at 150, 162. Brandon testified: "[Appellant] appeared to be having some type of seizure. He wasn't coherent. Hardly responsive. [H]e was appearing to be having some type of medical emergency." *Id.* at 151. Tyler likewise stated he saw Appellant "having a seizure," describing him as "[s]louched over to the right[,] convulsing and drooling." *Id.* at 162.

Paramedic James Lenhart, who responded to the scene, testified to the following. At 10:33 a.m., Appellant was in the driver's seat, and a bystander was "holding stabilization of his head in case there was a neck injury." N.T. Jury Trial at 177-78. Bystanders told Paramedic Lenhart they "may have seen [Appellant] seize." *Id.* Appellant was saying "mostly incomprehensible words." *Id.* at 179. At 10:51, however, Appellant was "alert and oriented" and stated "he believes his brakes went out causing the accident." *Id.* at 180-81. Paramedic Lenhart believed Appellant may have suffered a head injury. *Id.* at 181.

Pennsylvania State Corporal Bradley Poole testified as an expert in crash investigation and reconstruction. N.T. Jury Trial at 191. A post-accident examination of Appellant's truck revealed "the two driver side brakes were working." *Id.* at 219. The officer could not examine the right front brakes due to damage to the truck. *Id.* at 218. Additionally, the manual transmission gear was "in fifth gear," or the highest gear for speed. *Id.* at 217.

Appellant did not dispute the above evidence, but testified to the following. He remembered "getting on 70 in New Stanton." N.T. Jury Trial at 312. He has no memory of the accident, and the next thing he remembers is waking up in the hospital at approximately 2:00 or 3:00 p.m. *Id.* at 312-13. A hospital report, however, shows Appellant was evaluated at 11:40 that day, and that he stated both that he "struck [his] head and [thought] he may have lost consciousness," and that he was "not able to brake fast enough and [thus] hit another car." *Id.* at 321. At trial, Appellant stated he did not recall making these statements, nor telling Paramedic Lenhart he believed his brakes caused the accident. *Id.* at 318, 321. At the hospital, Appellant underwent "several CAT scans" of his head, face, chest, and lumbar spine, all of which were "negative." *Id.* at 313, 321. Appellant was discharged the same day with a diagnosis of "motor vehicle collision with closed-head injury." *Id.* at 313, 319. There was no mention in the hospital records of "some type of medical incident **prior to** the crash." *Id.* at 322 (emphasis added).

Three weeks after the accident, in an interview with Corporal Poole, Appellant stated he did not "remember the crash and . . . sustained a concussion as a result of the crash. N.T. Jury Trial at 320. Appellant did **not** tell the officer that he believed the "crash was caused by some type of medical incident." *Id.* After the accident, Appellant visited a neurologist and heart, stress, and sleep doctors, to determine "what happened," as he felt "something happened to [him] during the accident." *Id.* at 314. The doctors

advised him not to drive for a month or go to work "[u]ntil they ran tests." *Id.* Appellant then agreed there were no "medical restrictions" on his driver's license.[6] *Id.* at 314-17. Appellant also testified he did not have any seizures prior to or after the accident. *Id.* at 315.

Appellant requested an "Involuntary Act" jury instruction — that the Commonwealth bore the burden to prove his actions were voluntary and were not the result of a seizure. *See* N.T. Jury Trial at 306. This instruction would provide that if the jury found "the Commonwealth has failed to disprove that [Appellant] was having a seizure prior to the accident, [the jury] may . . . find he was incapable of forming the relevant mental state to act in a reckless or grossly negligent manner . . . as his actions were involuntary." *Id.* The Commonwealth responded Appellant bore — and failed to meet — the burden of presenting some evidence that he had "a seizure **prior to** the crash, not a seizure **as a result of** a closed-head injury after the crash." *Id.* at 299 (emphases added). The Commonwealth argued: "[T]here has to be some type of diagnosis. [I]f the defense is going to raise this type of argument, they bear the production of establishing some evidence. They can't simply say that the symptoms observed after the crash are both consistent with a closed-head injury and maybe a seizure disorder." *Id.* at 291.

---

[6] Appellant was precluded from stating, on hearsay grounds, whether he was provided a "medical conclusion about what might have happened." N.T. Jury Trial at 315.

The trial court denied Appellant's request, but stated it would provide the "general instruction about the Requirement of a Voluntary Act:" "A person is not guilty of an offense unless his liability is based on conduct, which includes a voluntary act or the omission to perform an act of which is physically capable." N.T. Jury Trial at 306-07.

The trial court instructed the jury consistent with our summary above. *See* N.T. Jury Trial at 367. Pertinent to this appeal, we note Appellant raised no objection during or after the jury charge. *See id.* at 378. Instead, at the conclusion of the jury charge, the court asked both parties, "[A]ny additional instructions I need to give?" *Id.* at 377. The Commonwealth and Appellant's counsel both responded, "No, Your Honor." *Id.* at 377-78.

The jury found Appellant guilty of three counts of aggravated assault by motor vehicle and one count each of simple assault and REAP. At sentencing on October 17, 2019, the trial court further found Appellant guilty of seven summary traffic violations.[7] For each count of aggravated assault by motor vehicle, the court imposed a term of three to 23 months' imprisonment, all to run concurrently.

---

[7] *See* 75 Pa.C.S. §§ 3303(a)(1) (improper passing), 3309(1) (disregarding traffic lane), 3310(a) (following too closely), 3361 (failure to drive at safe speed), 3362(a)(3) (exceeding maximum speed limit by 36 mph), 3714(a) (careless driving), 3736(a) (reckless driving).

On October 25, 2019, Appellant filed a timely post-sentence motion, challenging the sufficiency and weight of the evidence, as well as the denial of his requested jury instruction. The court denied the motion seven months later, on May 26, 2020. Appellant filed a notice of appeal on June 22nd.[8] In response to the trial court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, Appellant timely filed a statement, which raised the following issues, verbatim:

1. The Court erred in determining the jury's verdicts in this matter were supported by sufficient evidence.

2. The Court erred in determining the jury's verdicts in this matter were not against the weight of the evidence.

_____

[8] We observe Appellant's post-sentence motion should have been denied by operation of law on Monday, February 24, 2020 — the 120th day after Appellant filed it. *See* Pa.R.Crim.P. 720(B)(3)(a) (if trial judge does not decide post-sentence motion within 120 days, the motion shall be deemed denied by operation of law). However, there was no order entered by the clerk of courts denying by operation of law, as required by Rule 720(B)(3)(c). *See* Pa.R.Crim.P. 720(B)(3)(c) (when a post-sentence motion is denied by operation of law, the clerk of courts shall enter an order and serve it on Commonwealth and defendant). Instead, as stated above, the trial court denied the motion on May 26, 2020. *See* Trial Ct. Op. at 2; Appellant's Brief at 8 n.1 (both citing the COVID 19-statewide judicial emergency as the reason for trial court's belated ruling).

Under these circumstances, we deem Appellant's notice of appeal, filed within 30 days of the court's order, as timely filed. *See Commonwealth v. Parrish*, 191 A.3d 31, 35 n.9 (Pa. Super. 2018) (a court breakdown occurs when the clerk of court fails to enter an order notifying the appellant his post-sentence motion was denied by operation of law, and if trial court subsequently issues a denial order, we may deem timely a notice of appeal filed within 30 days of that order).

Appellant's Concise Statement of Errors Complained of on Appeal, 7/10/20.[9]

On appeal, Appellant presents the following issues for our review:

1. Whether the Court erred in denying the Appellant's request for a jury instruction outlining the Commonwealth's evidentiary burden of proving the Appellant's actions were voluntary and not the result of a seizure?

2. Whether Court erred in determining the guilty verdicts were supported by sufficient evidence when the Commonwealth failed to prove the Appellant possessed the requisite *mens rea* for criminal conduct?

3 Whether the Court erred in determining the jury's verdicts were supported by the weight of the evidence when the Commonwealth failed to conclusively prove the Appellant's actions were voluntary?

---

[9] We note the vagueness of Appellant's Rule 1925(b) issues, which merely refer to "the jury's verdicts in this matter." ***See*** Appellant's Concise Statement of Errors Complained of on Appeal. Appellant was found guilty by the jury of three counts of aggravated assault by motor vehicle, and one count each of simple assault and REAP; he was also found guilty by the trial court of seven Vehicle Code violations. We remind Appellant's counsel that such deficiencies may result in waiver:

In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. "Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." Here, as is evident, [the a]ppellant not only failed to specify which elements he was challenging in his Rule 1925(b) statement, he also failed to specify which conviction he was challenging. Thus, we find [the a]ppellant's sufficiency claim waived on this basis.

***See Commonwealth v. Garland***, 63 A.3d 339, 344 (Pa. Super. 2013) (citations omitted).

- 9 -

Appellant's Brief at 3.

In his first issue, Appellant avers the trial court erred in denying his request for a jury instruction that the Commonwealth bore the burden of showing his actions were voluntary and were not the result of a seizure. Appellant relies on *Commonwealth v. Fierst*, 620 A.2d 1196 (Pa. Super. 1993), which addressed a claim "that trial counsel was ineffective for failing to request a jury charge that [the defendant] could not be liable for third degree murder and aggravated assault[, arising from the defendant's swerving his car into incoming traffic,] because his involuntary actions would not suffice to prove malice." *See Fierst*, 620 A.2d at 1205. In *Fierst*, police responding to the scene noticed the defendant "seemed to be suffering from a seizure." *Id.* at 1199. Appellant summarizes *Fierst* to hold an involuntary-action "instruction is appropriate when an involuntariness defense is raised due to a seizure event." Appellant's Brief at 11. Appellant also relies on *Rehaif v. United States*, 139 S.Ct. 2191 (2019), which he summarizes to hold "the word 'knowingly[,]' in the context of the knowing possession and prohibition from possessing a firearm," to be "comprehensive, applying to each element of the offense." Appellant's Brief at 12. Appellant extrapolates from *Rehaif* the principle that "it remains the Commonwealth's burden to prove scienter, even if that means **disproving** that the Defendant in this matter had a seizure." *Id.* at 13. Finally, Appellant analogizes the

Commonwealth's alleged burden in this case, to disprove he had a seizure, to the Commonwealth's burden to disprove a claim of self-defense. *Id.*

We conclude Appellant has waived this issue. First, although he requested the jury instruction, Appellant failed to object to the jury charges that were given. *See* Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury."); *Commonwealth v. Knight*, 241 A.3d 620, 634 (Pa. 2020) (appellant did not challenge the trial court's jury instructions before the jury retired to deliberate, and thus waived this challenge). Furthermore, Appellant did not include this issue in his court-ordered Rule 1925(b) statement. *See* Pa. R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived."); *Knight*, 241 A.3d at 634 ("[I]n order to preserve a claim for appellate review, an appellant must comply whenever the trial court orders him to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925, and any issue not raised in a 1925(b) statement will be deemed waived.").

Moreover, even if Appellant had not waived this issue, no relief would be due. The trial court distinguished *Fierst*, which specifically addressed the *mens rea* element of malice, with respect to third-degree murder and aggravated assault. Trial Ct. Op. at 3. Appellant's offenses — aggravated assault by motor vehicle, simple assault, and REAP — however, include the

- 11 -

relevant element of recklessness. *Id.*; *see* 18 Pa.C.S. §§ 2701(a)(1), 2705; 75 Pa.C.S. § 3732.1(a). The court also distinguished *Rehaif*, whose "discussion and ruling [were] particular to the statutory language at issue in that case and resolving whether the **presumption-in-favor-of-scienter** interpretive maximum applied. This is inapplicable in the present matter." Trial Ct. Op. at 4. On appeal, Appellant fails to address the court's reasoning, let alone explain why it was in error. Instead, Appellant merely reasserts the same claims already disposed of by the trial court. Accordingly, no relief would be due.

Appellant's second claim is that evidence was insufficient to establish aggravated assault by motor vehicle and REAP, "as the Commonwealth failed to prove [he] possessed the requisite *mens rea*." Appellant's Brief at 15. He states, "[T]he alleged instance here, an epileptic seizure while driving and an ensuing accident is a classic law school textbook example to distinguish cases in which there is no criminal culpability[.]" *Id.* at 16. Appellant contends:

> The Commonwealth's evidence, that [he] drove . . . at a high rate of speed recklessly or intentionally into the [victims's] vehicle without apparent braking or distraction, when balanced against the more plausible theory — that . . . Appellant suffered a novel medical event, namely a seizure — cannot meet even the low bar of sufficiency for conviction beyond a reasonable doubt.

*Id.* at 18-19. Appellant reiterates the Commonwealth's burden to "prove the voluntariness of [his] actions" included the burden to disprove he had a seizure at the time of the accident. *Id.* at 20.

- 12 -

Appellant's final claim is that the jury's verdict was against the weight of the evidence. In support, he argues:

> [T]he grievous injuries suffered by the [victims] were not the result of his choice. . . . Appellant did not know he would lose consciousness on May 8, 2016, causing irreversible debilitation to the [victims.] Indeed, he was given no more choice to control his vehicle as the [victims] were to avoid the ensuing horror.

Appellant's Brief at 23. No relief is due.

Appellant conflates the ideas of sufficiency and weight of the evidence. Despite his characterizing his second issue as a challenge to the sufficiency of the evidence, his supporting discussion goes to the weight of the evidence. *See Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003) ("A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict."). Appellant acknowledges "[t]he Commonwealth's evidence[ ] that [he] drove his vehicle at a high rate of speed recklessly or intentionally into the [victims'] vehicle," but maintains "the more plausible theory" is that he suffered from a seizure." Appellant's Brief at 18-19.

We note the relevant standard of review:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the . . . verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying

question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Orr*, 38 A.3d 868, 873 (Pa. Super. 2011) (*en banc*)

(citations omitted).

The offense of aggravated assault by motor vehicle is defined as follows:

Any person who recklessly or with gross negligence causes serious bodily injury to another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic, except section 3802 (relating to driving under influence of alcohol or controlled substance), is guilty of aggravated assault by vehicle, a felony of the third degree when the violation is the cause of the injury.

75 Pa.C.S. § § 3732.1(a). REAP is defined, in pertinent part, as follows: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705.

The trial court addressed Appellant's issue as follows:

On approach to the accident scene, [Appellant's] engine was redlining, he was travelling approximately 71 miles per hour, he quickly switched lanes twice, passing and nearly striking Joni Allison's vehicle, before accelerating through the collision with the [victim's] Elantra without ever braking. . . .

To be sure, the evidence presented could have supported a finding that [Appellant's] conduct was involuntary. That question, however, is not before the Court. As presented to the jury, the evidence was certainly sufficient to support a conclusion that [Appellant] suffered a concussion during the accident which caused the symptoms that followed. In the court's view, the jury's verdict does not represent a denial of justice against the weight of the evidence presented at trial, but instead the jury's

- 14 -

considered judgment following a clear and thorough presentation of the facts and voluntariness issue.

Trial Ct. Op. at 4-5. The court also reasoned Appellant's 'involuntariness was before the jury for consideration as [the jury] was instructed[:] 'A person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act of which is physically capable.'" *Id.* at 4. "Having received this instruction and the question of [Appellant's] voluntariness being clearly made the critical issue of trial by the parties' presentation of the evidence and arguments, the Court believes the jury's deliberations were well guided." *Id.* at 5.

Again, Appellant does not address the trial court's discussion nor present any claim of trial court error. Instead, he merely re-iterates the same argument presented to the jury at trial — that the jury should accept his theory of the case over the Commonwealth's theory. Appellant's request for relief would have this Court reweigh the evidence in his favor and supplant the jury's findings of fact with our own. This we cannot do. *See Orr*, 38 A.3d at 873. The jury was free to believe all, part, or none of the Commonwealth's evidence and Appellant's own testimony. *See id.* Thus, we decline to disturb the trial court's denial of his post-sentence motion.

Concluding none of Appellant's issues merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

- 15 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/26/2021