J-S10018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARVIN GILBERTO BENITEZ | : | |
| | : | |
| Appellant | : | No. 517 EDA 2022 |

Appeal from the PCRA Order Entered January 28, 2022
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0000770-2020

BEFORE:  PANELLA, P.J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY LAZARUS, J.:                        **FILED MAY 9, 2023**

Marvin Gilberto Benitez appeals from the order, entered in the Court of Common Pleas of Lehigh County, dismissing, after a hearing, his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

The facts, as summarized by the prosecutor at Benitez's guilty plea hearing,[1] are as follows:

> On January 18[,] 2020[,] at approximately 12:48 p.m., the Lehigh County 911 Center notified Pennsylvania State Police [PSP] Bethlehem of a report of a female with a gunshot wound at 1834 Troxell Street, Hanover Township, Lehigh County, Pennsylvania. Upon arrival on the scene, members of the [PSP] Bethlehem were directed by neighbors to the area of the basement of the residence at 1834 Troxell Street.  The basement was accessed via an exterior entrance on the side of the residence.  Upon entry to the basement, troopers made contact with the victim[,] who was

---

[1] Benitez acknowledged that these were the facts of the case.  **See** N.T. Guilty Plea Hearing, 8/13/20, at 11.

suffering from an apparent gunshot wound to an area of her back. A resident of the home, who was identified as the defendant[,] Marvin Gilberto Benitez, was observed next to the victim. Troopers also observed[,] in plain view[,] hypodermic needles and wax packets in the area of Benitez's room consistent with the use of [ill]icit drugs. Troopers additionally observed a hole in the bedroom basement door consistent with firearm[] damage.

[] Benitez spoke to the troopers on [the] scene and indicated he was responsible for the discharge of a firearm and that the shooting was an accident. A subsequent interview with [] Benitez was conducted at [PSP] Bethlehem. [] Benitez related that early in the afternoon of January 18[, 2020,] he retrieved a 9 millimeter Hi-Point long gun from underneath his bed. He was seated on his bed and began inspecting the firearm. As he was manipulating the firearm, he accidentally discharged one round from the firearm. The round traveled through his bedroom door and through an adjacent door outside of his room, which is located in the basement. The round subsequently struck another resident of the home[,] who[m] he identified as the victim.[2] The victim was a tenant of the residence owned by [] Benitez's mother, and there was no relationship between [] Benitez and the victim. [] Benitez related he purchased the Hi-Point firearm approximately two weeks prior to the incident for $500 from an unknown individual in the City of Allentown.

[] Benitez stated that he purchased the firearm to protect himself from a person who had been threatening his safety. These threats prompted him to retrieve the firearm from under his bed prior to the incident, and subsequent text messages revealed that he had been texting his mom[,] concerned that someone had been in the home. []Benitez related that after the firearm discharged, he opened his bedroom door and observed the victim [lying on] the ground screaming for help. Another resident of the home came down to the basement and called 911. That resident didn't speak English, so Benitez got on the phone to speak with the 911 dispatcher. [] Benitez related that he explained to the dispatcher that the victim was shot in the back and that he was the one who shot the victim. []Benitez related he told the dispatcher it was an accident. He further related to the police that after the 911 call, he took the Hi-Point firearm and placed it back under his mattress

---

[2] The victim and her boyfriend, Juan Pablo Torres-Mendez, lived in the basement of the same residence with Benitez.

in the bedroom. The victim was subsequently transported by EMS personnel to the hospital.

On January 18[,] 202[0], a search warrant was approved and executed at 1834 Troxell Street[—]the residence of the shooting. During a search, a loaded Hi-P[o]int Model 995, 9 millimeter rifle serial number F56291 was located in between the mattress and box spring of [] Benitez's bed[]. A spent 9 millimeter shell casing was located on the top of the bed. A plastic bagg[ie] containing a crystal substance was located on the nightstand next to the bed. There were hypodermic syringes strewn about the bedroom. A hole consistent with the gunshot was located in the bedroom door of [] Benitez's room and a hole consistent with the gunshot was located on the victim's bedroom door. Blood was observed on the floor of the victim's bedroom. Items were photographed and the crystal substance was subsequently tested and positively identified as methamphetamine.

The victim was taken to St. Luke's Hospital[,] where she was treated for injuries to her lung. The bullet had penetrated her back and entered her lung. The bullet was unable to be removed due to its location, and [the victim] has various fragments still in her body. A subsequent toxicology test of [Benitez's] blood revealed that he did[,] in fact[,] have methamphetamine in his blood at the time of the shooting.

N.T. Guilty Plea Hearing, 8/13/20, at 8-11 (footnote added).

Prior to entering a guilty plea, Benitez reviewed and executed a written guilty plea colloquy with his attorney, John Francis Baurkot, Esquire. On August 13, 2020, Benitez entered a negotiated guilty plea in open court to aggravated assault, a first-degree felony.[3] At the plea hearing, the court conducted an extensive verbal colloquy with Benitez, during which Benitez acknowledged the following terms of his plea agreement: the Commonwealth agreed to cap the minimum term of Benitez's sentence at the bottom end of

---

[3] 18 Pa.C.S.A. § 2702(a)(1).

the standard-range of the Sentencing Guidelines, based upon the deadly-weapon-used enhancement, and the Commonwealth agreed to withdraw the remaining charges.[4]  During the oral colloquy, Benitez indicated, among other things, that he was satisfied with Attorney Baurkot's representation, that he understood the possible maximum sentence that could be imposed, that the agreed-upon sentencing cap at the bottom end of standard-range would depend upon his yet-to-be-determined prior record score (which would include the deadly weapon enhancement), and acknowledged the facts as set forth by the prosecutor.  *See supra*, n.1.; N.T. Guilty Plea Hearing, 8/13/20, at 4, 6-8, 11, 17.  *See also See Commonwealth v. Fluharty*, 632 A.2d 312, 313 (Pa. Super. 1993) ("[A] plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea.").

Prior to sentencing, a pre-sentence investigation report was prepared that calculated Benitez's prior record score as 5.  On September 23, 2020, the court sentenced Benitez to a term of 90-180 months of incarceration, with a 5-year probationary tail and various conditions of supervision.  Benitez did not file a motion to withdraw his guilty plea, post-sentence motions, or a direct appeal.  *See Commonwealth v. Andrews*, 158 A.3d 1260, 1265 (Pa. Super.

---

[4] The criminal complaint also charged Benitez with various drug offenses, simple assault, and recklessly endangering another person.  *See* Lehigh County Police Criminal Complaint, 1/18/20, at 2-4.

2017) ("A plea of guilty constitutes a waiver of all non[-]jurisdictional defects and defenses [and] waives the right to challenge anything but the legality of [the] sentence and the validity of [the] plea."); *see also Commonwealth v. Collins*, 888 A.2d 564 (Pa. 2005) (post-conviction claim of ineffective assistance of counsel raises distinct legal ground, rather than alternative theory in support of same underlying issue that was raised on direct appeal, and, thus, ineffectiveness claims distinct from previously litigated or waived issues and may be brought in PCRA proceedings).

On August 10, 2021, Benitez, with the aid of new counsel, Glennis L. Clark, Esquire, filed the instant, timely PCRA petition. On January 21, 2022, the PCRA court held a hearing at which plea counsel and Benitez testified.[5] On January 26, 2022, Benitez filed a motion to re-open the PCRA hearing, claiming that "[d]uring the hearing, counsel for the defendant failed to establish for the record facts from [] Benitez essential to the petition." Motion to Re-Open PCRA Hearing, 1/26/22. On January 28, 2022, the PCRA court denied Benitez's motion to re-open the PCRA hearing and denied his PCRA petition.

Benitez filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Benitez raises the following issues for our review:

---

[5] Benitez specifically testified that Attorney Baurkot discussed the elements of aggravated assault with him prior to him waiving his preliminary hearing. N.T. Guilty Plea Hearing, 1/21/22, at 14.

> (1) Whether counsel was ineffective for inducing [Benitez] to enter an involuntary and unknowing guilty plea[.]
>
> (2) Whether the court erred in denying [Benitez's] PCRA[] petition[.]

Appellant's Brief, at 7.

"This Court's standard of review from the [] denial of post-conviction relief is limited to examining whether the [PCRAl] court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 710 A.3d 516, 520 (Pa. 1997) (citation omitted). When a petitioner claims that he has received ineffective assistance of counsel, relief will only be granted where

> he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." . . . [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

**Commonwealth v. Johnson**, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted). Moreover,

> [a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea.

> ***Commonwealth v. Allen***, [] 732 A.2d 582 ([Pa.] 1999). Where the defendant enters his plea on the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" [***Commonwealth v.***]***Hill***, 474 U.S. [52,] 56 (1985).

***Commonwealth v. Hickman***, 799 A.2d 136, 141 (Pa. Super. 2002) (some citations omitted).

Instantly, Benitez asserts that plea counsel was ineffective due to his failure to "understand the law of recklessness pertaining to aggravated assault . . . [where c]ounsel . . . believe[ed] the recklessness necessary to prove recklessly endangering is the same as the recklessness requirement for aggravated assault." Appellant's Brief, at 12. Because Benitez claims that he did not deliberately or consciously disregard an unjustified risk of danger and, thus, did not act recklessly—a requirement to commit the crime of aggravated assault—he contends counsel "induced him to plead guilty [where counsel] unreasonably negotiated a guilty plea to the crime of aggravated assault." PCRA Petition, 8/10/21, at ¶¶ b(i.), c.

A person is guilty of aggravated assault if he "(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1). The intent element in the aggravated assault statute may be implied from the circumstances, such as acting in a matter that manifests a reckless, culpable disregard for the safety of others. ***Commonwealth v. Norman***, 549 A.2d 981, 984-85 (Pa. Super. 1988).

> [F]or the purpose of third-degree murder or aggravated assault, Pennsylvania courts have consistently held that malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm.

*Commonwealth v. Packer*, 168 A.3d 161, 168 (Pa. 2017). "Therefore, a person who acts negligently or with ordinary recklessness to cause a person to suffer serious bodily injury or death has not committed third-degree murder or aggravated assault, respectively." *Id.* at 169.

After a comprehensive review of the record and relevant case law, we conclude that it was reasonable for counsel to advise Benitez to enter a negotiated guilty plea to aggravated assault in exchange for the Commonwealth agreeing to withdraw all other charges and cap the minimum term of Benitez's sentence at the bottom of the standard-range. At the PCRA hearing, plea counsel testified that when he discussed negotiating a plea to a lesser charge with Benitez:

> [he] discussed . . . the level of culpability [for aggravated assault], talking about the recklessness with the case. Like, for them to, you know, prosecute him based on what I saw there, that they would probably have to show that his behavior was reckless based on the affidavit of probable cause at that point.
>
> *       *       *
>
> Well, **it would have to be more than normal recklessness**. It has to be more akin to gross negligence. And as we talked about the facts, things came out that [Benitez] told me.
>
> *       *       *

- 8 -

[Specifically, he told me t]hat he bought the gun because he ripped off some drug dealers, and they were upset with him and that he was getting high down in his basement and that he had a gun and that he took the gun out and that he was, like, paranoid and scared that he fired the gun, the gun fired, and that he hurt the victim and that he didn't intend to hurt the victim and that it was an accident.

\* \* \*

[With regard to my understanding of the law as it relates to reckless conduct involving aggravated assault, I believe t]hat it has to be grossly negligent, the recklessness, the standard under the criminal law. . . . Something more than normal negligence. Under the law I believe it's something that is likely to happen or may happen because of your conduct.

N.T. PCRA Hearing, 1/21/22, at 30-31 (emphasis added). In addition, plea counsel testified that Benitez gave inconsistent statements regarding his discharge of the weapon that severely injured the victim. First, Benitez stated that he was "playing with the gun [] and it went off," then he said "he dropped it, and it went off[,]" and, finally, he told a trooper that "**he pulled the trigger**." *Id.* at 58-60 (emphasis added). The troopers also noted in a police report that Benitez gave inconsistent statements regarding whether he knew the gun's chamber was loaded with ammunition before it was discharged. *See* PSP Interview of Marvin Gilberto Benitez, 1/18/20, at 2.

To support his argument that counsel was ineffective, Benitez relies on *Hickman*, *supra*. In that case, the defendant alleged plea counsel's ineffectiveness for inducing him into entering an invalid plea where "counsel misled him to believe that he would be eligible for boot camp after serving the first two years of his minimum sentence." *Id.* at 139. In fact, the defendant

was not eligible for boot camp under the enabling statute. *Id.* On collateral appeal, our Court concluded plea counsel was ineffective based on "an ignorance of relevant sentencing law [where] counsel's advice was legally unsound and devoid of any reasonable basis designed to effectuate [defendant's] interests." *Id.* at 141. Moreover, our Court found that counsel's advice prejudiced the defendant where he averred that he "would have pled 'not guilty' and gone to trial had he not been advised that the negotiated plea offered the lone opportunity for boot camp." *Id.*

The facts of the instant case are distinguishable from *Hickman*. Unlike plea counsel in that case, here Attorney Baurkot testified that he was aware of the legal distinction between normal recklessness and the type of recklessness necessary to prove the *mens rea* for aggravated assault and that he discussed the levels of culpability with Benitez when considering whether to plead guilty. *See* N.T. PCRA Hearing, 1/21/22, at 30. Moreover, Attorney Baurkot testified that due to the inconsistent statements Benitez gave to authorities regarding how the gun was discharged and whether Benitez knew that the gun was loaded at the time of the shooting, he advised Benitez that the Commonwealth would not permit him to plead to a lesser charge than aggravated assault. N.T. PCRA Hearing, 1/21/22, at 60. *See* PSP Follow-Up Report #10, 1/31/20 (while attending to victim at scene, officers reported Benitez repeatedly stated to them, "I did it, I shot her, [i]t was an accident, I was playing with the gun and it went off[.]"); *id.* (officers reported Benitez told them "that he was playing with a '9mm' when it went off[;]" officers

- 10 -

reported Benitez later told officers "he dropped it when it went off"); PSP Interview of Marvin Gilberto Benitez, 1/18/20, at 1 (Benitez told troopers interviewing him that he "took the gun from under his mattress[,] was sitting up [o]n his bed looking at it and handling it[,] didn't realize there was round in the []chamber[, and] **pulled the trigger** and then the next thing he knew he knew a female was screaming outside of his bedroom") (emphasis added); *id.* (Benitez told troopers "[w]hen he realized someone was shot[,] he placed the gun back under his mattress"); *id.* at 2 (Benitez contradicted earlier statement to troopers "stat[ing] that **the gun was fully loaded with a round in the chamber when he stored it under the mattress**") (emphasis added).

Here, the reasonableness of Attorney Baurkot's actions are apparent from the face of the record as the facts support a finding of recklessness under the aggravated assault statute. *Fluharty*, *supra* at 313 (counsel's advice to enter guilty plea to aggravated assault "was eminently reasonable [where] the objective facts and circumstances were sufficient to permit fact-finder to infer an intent to inflict serious bodily injury on" victim). Specifically, the record contains the following facts: Benitez admitted to troopers at the scene that he discharged the firearm that injured the victim; during his interview with authorities, Benitez stated that he retrieved a 9mm gun from underneath his bed and accidentally discharged one round from the firearm; and the round traveled through his bedroom door and through an adjacent basement door, striking the victim. *Cf. Commonwealth v. O'Hanlon*, 653 A.2d 616 (Pa.

1995) (defendant, who drove while intoxicated, did not possess *mens rea* to support aggravated assault, where "[s]erendipity, not intention[,] placed the victim[, a pedestrian,] in [defendant's] path when he drove through [] red light"), **but see Commonwealth v Schofield**, 521 A.2d 40 (Pa. Super. 1987) (where defendant consumed alcohol and ingested drugs prior to driving vehicle, trial court correctly concluded "record [wa]s replete with evidence that [the defendant] operated his car in an *intentionally* reckless manner" for purposes of proving *mens rea* of aggravated assault statute) (emphasis added).

Benitez further stated to troopers that he purchased the illegal firearm to protect himself from a drug dealer[6] to whom he owed money, and that, at the time of the alleged incident, he was concerned that the drug dealer was in his home. **See** N.T. PCRA Hearing, 1/21/22, at 21-22 (Benitez testifying he was texting his mother, right before gun discharged, because he was afraid drug dealer to whom he owed money was in his house); **id.** at 60 (Attorney Baurkot testifying police report included Benitez's texts with his mother saying

---

[6] The victim gave a statement to authorities,two days following the shooting stating that:

> her boyfriend, Torres-Mendez, told her that while he was at home[, a few weeks prior,] a few Hispanic males in a vehicle came to the residence looking for Benitez [and that] the males were suspicious and appeared to be angry. The males were in a black Toyota sedan with PA registration FLV-0161.

PSP Interview of Victim, 1/20/20, at 2.

he "owed people money, that they were after him, they were stopping by the house[,] that they were going to kill him [because] he has been avoiding them [and] that they want $2,000 from him"); PSP Interview of Marte DeBenitez,[7] 1/28/20 (officer's narrative including text messages sent between Benitez and his mother indicating people "want to kill [him] because [he has been] fleeing and they haven't seen [him] in a long time"). Counsel also testified that because Benitez fired the gun while "high off of methamphetamine" and also "under the influence of fentanyl," N.T. PCRA Hearing, 1/21/22, at 13, 20, he believed that the drugs "ma[d]e [Benitez] paranoid" and that "he had the gun to protect himself from those drug dealers." *Id.* at 31-32.

Finally, in deciding to advise Benitez to enter a guilty plea, counsel also weighed the fact that Benitez changed his story three times with regard to how the 9mm was discharged and also contradicted himself when he first stated he did not know if the gun was loaded and then later told troopers the gun was fully loaded. *See id.* at 21, 59-60, 77, 79; PSP Interview of Marvin Gilberto Benitez, 1/18/20, at 1-2.

Under such facts, counsel had a reasonable basis to believe that, under the totality of the circumstances, Benitez's actions would be considered a "conscious disregard [of] a substantial and unjustifiable risk" and a "gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." 18 Pa.C.S.A. § 302(b)(2). Counsel testified

---

[7] Marte DeBenitez is Benitez's mother.

that Benitez had told him he owed drug dealers $2,000, that they were coming for him and looking for him, that he was trying to avoid them, and that right before the shooting, he "said he heard them in the house [] and they were there." N.T. PCRA Hearing, 1/21/22, at 60-61. Moreover, the fact that Benitez, while under the influence of methamphetamine and fentanyl, discharged a loaded gun into a bedroom door in a residence housing two other tenants, further supports the necessary *mens rea* under section 2701(a)(1). *See Commonwealth v. Daniels*, 354 A.2d 538 (Pa. 1976) (evidence sufficient to prove aggravated assault where firing number of shots in barroom filled with people constituted reckless conduct; fact that there was no evidence defendant intended to hit victim irrelevant for sustaining section 2701(a) conviction); *Commonwealth v. Fierst*, 620 A.2d 1196 (Pa. Super. 1993) (intent, for purposes of aggravated assault conviction, need not be directed at specific person).

Finally, plea counsel had an additional reason for recommending Benitez plead guilty to aggravated assault where the Commonwealth agreed to withdraw four other charges, including two second-degree misdemeanors, lodged against Benitez. *Fluharty*, *supra* at 227-28 (where record establishes counsel negotiated favorable plea bargain and defendant understood bargain and was satisfied with and accepted it, counsel not ineffective for advising defendant to enter guilty plea).

Here, where Benitez's underlying issue does not have arguable merit and counsel's actions did not lack an objective reasonable basis, the court properly dismissed his PCRA petition. ***Johnson***, ***supra***.

Order affirmed.[8]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/2023

_____

[8] At sentencing, the assistant district attorney for the Commonwealth best summarized how grossly reckless Benitez's action were on the day in question:

> So he's sitting there with his illegal gun, high on meth, and paranoid that this drug dealer is coming because he's texting his mother, "Who's in the house?  Who's in the house?  Who's in the house?"  And all this builds to a shot going through the door.  So they can say, well, you know, it was accidental, it wasn't intentional.  But, in fact, the totality of his actions led to an almost certain result.  He had an illegal gun.  He's playing with his illegal gun.  He's high on meth, and he's worried someone is coming to get him, and he's hearing noises in the house.  And [] the end result wasn't that . . . th[e] person that he took the meth from [got shot], it's that this innocent person here got shot, a woman who, by her own description, minds her own business, lives a good life.  And, as she speaks, is somewhat quiet and diminutive and describes her injuries, horrendous injuries, she suffered because he had absolutely no control on that day.

N.T. Sentencing Hearing, 9/23/20, at 18-19.